**In re Kaluwa KIETA, Debtor**

**No. 01–14645–JNJ.**

United States Bankruptcy Court,
D. Massachusetts.

Sept. 22, 2004.

John F. Sommerstein, Law Offices of John F. Sommerstein, Boston, MA, for Debtor.

Doreen Solomon, Boston, MA, for Chapter 13 Trustee.

## MEMORANDUM

JAON N. FEENEY, Chief Judge.

## I. INTRODUCTION

The Court heard the Debtor's Motion to Refinance Real Estate Located at 25 Oakley Street, Dorchester, Massachusetts (the "Motion to Refinance") on September 9, 2004. Pursuant to her Motion, Kaluwa Kieta (the "Debtor") sought Court authority to refinance her real estate located at 25 Oakley Street, Dorchester, Massachusetts (the "Property") for the purpose of satisfying her existing mortgage and the balance owed to her general unsecured creditors under her confirmed Chapter 13 plan. The Chapter 13 trustee filed an Objection to the Debtor's Motion to Refinance in which she observed that if the Debtor were permitted to refinance the Property with a new loan of $216,000 she would have approximately $107,000 in equity in the Property, based upon its current fair market value of $313,000, and that, after considering the Debtor's exemption of $16,000 and the current fair market value of the property, she would have $77,400 in non-exempt equity, a sum sufficient to provide her unsecured creditors with a dividend of 100%. The Chapter 13 trustee added that, if the Debtor intended to make a lump sum payment to satisfy her Chapter 13 plan, she must be required to file amended Schedules I and J, reflecting any change in circumstances as of the date of the refinancing, and an amended Chapter 13 plan.

At the September 9, 2004 hearing, the Court granted the Debtor's Motion to Refinance but sustained the Chapter 13 trustee's Objection in part, ruling from the bench that the Debtor must file amended Schedules I and J and an amended Chapter 13 plan increasing the dividend to unsecured creditors due to the refinancing.

The Court also granted the Debtor's oral motion for a stay pending appeal on the condition that the Debtor place sufficient funds in escrow to pay a 100% dividend to her unsecured creditors.

The issues raised by the Debtor's Motion to Refinance are whether the appreciation in the value her Property and the refinancing proceeds are property of her bankruptcy estate; whether that appreciation must be made available to increase the dividend payable to unsecured creditors, and whether the Debtor must file an amended Chapter 13 plan and amended Schedules I and J to account for the appreciation in the value of the Property and her receipt of refinancing proceeds.

The material facts necessary to resolve the issues are not in dispute. Neither the Debtor nor the Chapter 13 trustee requested an evidentiary hearing. Accordingly, the Court makes the following findings of fact and rulings of law in accordance with Fed R. Bankr.P. 7052 with respect to its ruling issued from the bench on September 9, 2004.

## II. FACTS

The Debtor filed a voluntary Chapter 13 petition on June 6, 2001. One month later, on July 6, 2001, she filed her Schedules and Statement of Financial Affairs. On Schedule A—Real Property, the Debtor listed the Property with a current market value of $206,000. On Schedule C—Property Claimed as Exempt, the Debtor claimed the Massachusetts homestead exemption in the sum of $300,000. *See* Mass. Gen. Laws Ch. 188, § 1. On Schedule D—Creditors Holding Secured Claims, the Debtor listed Chase Manhattan Mortgage Corporation ("Chase Manhattan") as the holder of a first mortgage on the Property in the sum of $190,000. On Schedule F—Creditors Holding Unsecured Nonpriority

Claims, the Debtor listed nine creditors with claims totaling $9,357. On Schedules I and J—Current Income and Expenses of Individual Debtors, the Debtor represented that she had excess monthly income of $402.

The Debtor also filed her Chapter 13 plan on July 6, 2001. Through her 60–month plan, she proposed to pay arrears of $18,753.66 to Chase Manhattan and a 10% dividend to her unsecured creditors.

Approximately three months after filing her Chapter 13 plan, on October 26, 2001, the Debtor moved to amend Schedules B, C, I and J. The Debtor amended Schedule C to claim the federal exemptions. Specifically, she claimed an exemption of $16,000 in the Property. Additionally, the Debtor amended Schedules I and J, but her monthly, net excess income remained the same at $402, as did her monthly mortgage payment of $1,602.

On February 13, 2002, the Court confirmed the Debtor's Chapter 13 plan. The order of confirmation provided among other things the following:

> The Debtor shall pay to the Chapter 13 Trustee the sum of *$402.00* per month commencing *August 1, 2001* which payments shall continue through completion of the Plan and shall be made on the *1st* day of each month unless otherwise ordered by the Court. . . .
>
> The effective date of confirmation of the Plan is *August 1, 2001*. The plan disbursements to be made by the Chapter 13 Trustee pursuant to the confirmed plan are set forth on the attached summary which is incorporated by reference. . . . *Unless otherwise ordered by the court, all property of the estate as defined in 11 U.S.C. §§ 541 and 1306, including, but not limited to, any appreciation in the value of real property owned by the debtor, as of the commencement of the case, shall remain property of the estate during the term of the plan and shall vest in the debtor(s) only upon discharge.* All property of the estate shall remain within the exclusive jurisdiction of the bankruptcy court. The debtor(s) shall not transfer, sell or otherwise alienate property of the estate other than in accordance with the confirmed plan or other order of the bankruptcy court. The debtor shall be responsible for preserving and protecting property of the estate.

(emphasis supplied). The Debtor did not appeal the entry of the confirmation order.

In October of 2002, approximately seven months following confirmation of her Chapter 13 plan, the Chapter 13 trustee moved to dismiss the Debtor's case because the Debtor was three months in arrears, and Chase Manhattan, as the holder of a first mortgage on the Property in the original principal amount of $179,421, moved for relief from the automatic stay because the Debtor had failed to keep her monthly mortgage payments current. The Debtor responded to both motions. The Chapter 13 trustee withdrew her motion, and the Debtor and Chase Manhattan obtained Court approval of a Stipulation on December 20, 2002. Pursuant to the Stipulation, the Debtor agreed to pay Chase Manhattan $7,456.84, representing four monthly mortgage payments, late charges in the sum of $165.56, and attorneys' fees and costs in the sum of $890.

On September 29, 2003, America's Servicing Company, "as servicer for SFJV–2002–1, LLC," filed a Motion for Relief from Stay with respect to the Property in which it alleged that the Debtor had failed to remain current with her postpetition mortgage payments. The Court scheduled a hearing on the motion for November 20, 2003, but America's Servicing Company

withdrew the motion at the time of the hearing.

Six months later, America's Servicing Company filed another motion for relief from stay. It represented that, at the time it filed its motion, the Debtor's total postpetition arrearage was $4,670.80, excluding attorneys' fees and costs. America's Servicing Company withdrew its motion on June 7, 2004 before the Debtor filed a response.

The Debtor filed her Motion to Refinance two months later. In her Motion, she represented that she had obtained a conditional loan approval from Option One Mortgage through an entity identified as Mortgage Solutions. She further represented that the balance owed to the holder of the first mortgage was approximately $191,000, that the remaining payments under her Plan totaled approximately $15,000, and that the allowance of her motion was "in the best interests of the estate, the debtor and creditors." She reasoned: "The debtor will gain her discharge earlier than expected under the plan and creditors and the estate will receive their dividend more than 2 years earlier than projected."

The Debtor attached to her Motion to Refinance a barely legible Loan Approval Form. The Form showed an appraised value for the Property of $310,000, not $313,000 as set forth in the Chapter 13 trustee's Objection, a $104,000 appreciation from the $206,000 value which she ascribed to the Property when she filed Schedule A on July 6, 2001, and a loan amount of $216,000.

## III. DISCUSSION

Assuming, without deciding, that the holder of the first mortgage is owed $191,000 and the Property is worth $310,000, the Debtor has significant equity in her Property, i.e., $119,000 to satisfy the claims of her creditors in full because after the refinancing with a new loan in the sum of $216,000, she would have $94,000 in equity in the Property and $25,000 in proceeds after the payment of the holder of the first mortgage. The issues before the Court are whether those proceeds and that equity constitutes property of the estate, and whether the Debtor must file an amended Chapter 13 plan to make the equity and proceeds available to her creditors.

At the outset, it is abundantly clear that the order of confirmation entered in this case on February 13, 2002 contemplated that that equity is property of the estate. Moreover, the confirmation order was binding on "the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan . . . ." *See* 11 U.S.C. § 1327(a). Debtor's counsel, however, argued at the September 9, 2004 hearing that that determination was erroneous and that decisions such as *Barbosa v. Soloman*, 235 F.3d 31 (1st Cir.2000), apply only to sales of debtors' property, not refinancings. He urged the Court to distinguish *Barbosa* and "right a wrong." For the following reasons, this Court determines there is no wrong to be right and disagrees with the Debtor's counsel's interpretation of *Barbosa*.

Section 1306 of the Bankruptcy Code supplements 11 U.S.C. § 541. It provides the following:

(a) Property of the estate includes, in addition to the property specified in section 541 of this title—

(1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title whichever occurs first; and

(2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first.

11 U.S.C. § 1306(a). In *In re Rangel*, 233 B.R. 191 (Bankr.D.Mass.1999), the court observed that

[U]nlike Chapter 7, Chapter 13 property of the estate includes assets acquired post-petition. Despite the language in 11 U.S.C. § 1306(a) that post-petition assets are property of the estate until the case is converted, dismissed or closed, 11 U.S.C. § 1327(b) contains another provision for the termination of property of the estate. That section provides that "[e]xcept as otherwise provided in the plan or in the order confirming the plan, the confirmation of a plan vests all of the property of estate in the debtor." 11 U.S.C. § 1327(b).

233 B.R. at 193. The court added:

Sections 1306(a) and 1327(b) are difficult to reconcile. That is, the vesting of property of the estate in a debtor upon confirmation contravenes having post-petition assets included in property of the estate until the case is closed, dismissed or converted.

*Id.* at 193–94; *see also In re Barbosa* 236 B.R. 540, 545 (Bankr.D.Mass.1999), *aff'd, Barbosa v. Soloman,* 235 F.3d 31 (1st Cir. 2000).

The order of confirmation submitted for this Court's approval by the Chapter 13 trustee and entered by this Court obviates the problem observed by the court in *Rangel,* by this Court in *Barbosa,* and by numerous other courts. Consistent with § 1327(b)'s exception, the order of confirmation provided: "Unless otherwise ordered by the court, all property of the estate as defined in 11 U.S.C. §§ 541 and 1306, including, but not limited to, any appreciation in the value of real property owned by the debtor, as of the commencement of the case, shall remain property of the estate during the term of the plan and shall vest in the debtor(s) only upon discharge." Because the Debtor did not object or appeal the entry of the confirmation order, she is bound by it.

■ Having determined that the appreciation in value of the Debtor's Property is property of the estate, the Court must address the next issue posed by the Debtor's Motion to Refinance: Whether the Debtor is required to file an amended Chapter 13 plan and amended Schedules I and J. The answer is yes.

The Debtor, by seeking to payoff the existing mortgage and pay a 10% dividend to her unsecured creditors, in effect, seeks modification of her Chapter 13 plan. In her Motion to Refinance, she seeks both to shorten the duration of the plan and to reduce the dividend available to her unsecured creditors who are entitled to a dividend, not of 10% as she proposes to pay, but to "a dividend *no less than 10%*" (emphasis supplied). *See* Summary of Disbursements to be Made under the Plan, incorporated by reference in the order of confirmation. *See also In re Stamm,* 265 B.R. 10 (Bankr.D.Mass.2001); *In re DeVellis,* No. 99–16767–CJK, Slip op. (Bankr. D.Mass. August 24, 2004). To the extent the Debtor resists the notion that she is modifying her plan, the Chapter 13 trustee expressly seeks an order requiring the Debtor to file a modified plan in her Objection. *See* 11 U.S.C. § 1329.

Section 1329(a) of the Bankruptcy Code governs modifications of Chapter 13 plans. It provides:

(a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor,

the trustee, or the holder of an allowed unsecured claim, to—

(1) increase or reduce the amount of payments on claims of a particular class provided by the plan;

(2) extend or reduce the time for such payments; or

(3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any such claim other than under the plan.

11 U.S.C. § 1329(b). In *Barbosa v. Soloman,* the First Circuit adopted the approach of the Seventh Circuit in *In re Witkowski,* 16 F.3d 739, 746 (7th Cir.1994). In *Witkowski,* the court determined that "[t]he clear and unambiguous language of § 1329 negates any threshold change in circumstances requirement and clearly demonstrates that the doctrine of *res judicata* does not apply." The First Circuit, citing *In re Barbosa,* 236 B.R. at 548, stated:

"[W]hile *Witkowski* may be a correct statement of the law, as a practical matter, parties requesting modifications of Chapter 13 plans must advance a legitimate reason for doing so, and they must strictly conform to the three limited circumstances set forth in § 1329." *Id.* at 548.

\*　　\*　　\*　　\*　　\*　　\*

[W]e adopt the *Witkowski* approach as modified by the bankruptcy court and refrain from adopting the substantial and unanticipated test for seeking a modification pursuant to § 1329. Accordingly, we find that the Trustee and Mellon were not precluded by *res judicata* from seeking an amendment to the plan. In addition, given the factual circumstances of this case—where the Debtors realized through the sale an appreciation in value of almost 215% of the stipulated value of the property at

confirmation—we find that the bankruptcy court did not abuse its discretion in granting the amendment. *Witkowski,* 16 F.3d at 746. . . .

Finally, as the bankruptcy judge said, it is antithetical to the bankruptcy system to allow a debtor to "strip down" a mortgage, underpay the unsecured creditors, and obtain a super discharge under section 1328(a) of the Code, while selling the property mortgaged for a price of two times its estimated value for purposes of the "strip down", and keeping to himself the excess of the proceeds. *In re Barbosa,* 236 B.R. at 552. In fact, to allow the Debtors to keep the proceeds of the sale in such circumstances effectively defeats Congress' intention to extend the application of the "ability-to-pay" standard forward throughout the duration of the plan. Oversight Hearings, *supra.*

235 F.3d at 41–42.

Although the Debtor is correct in recognizing that *Barbosa* involved the sale of the debtor's real estate, the Court finds that the First Circuit's statement of Congressional intent is controlling, particularly where, as here, the order of confirmation did not vest the real estate in the Debtor as it did in *Barbosa.* Thus, the Court finds that the Debtor must comply with § 1329(b). Moreover, this Court finds the decision in *In re Trumbas,* 245 B.R. 764 (Bankr.D.Mass.2000), is distinguishable from the instant case. In *Trumbas,* the debtor moved for authority to refinance her property following the confirmation of her Chapter 13 plan, which bifurcated the claim of Federal National Mortgage Association ("FNMA") into a secured claim of $40,000 and an unsecured claim of approximately $140,000. *Id.* at 765. The debtor withdrew her motion, through which she sough authority to incur secured debt of

$104,800 based on a fair market value of her property of $131,000, after the Chapter 13 trustee and FNMA, as the holder of an unsecured deficiency claim, objected. FMNA then filed a motion to modify the debtor's plan under § 1329(a) and a modified plan in which it envisioned that it would be paid $131,000 and the unsecured creditors would received a dividend of over 90%. *Id.* At 765–66. FNMA predicated its plan on a refinancing of the Debtor's real property. The court observed the following:

> FNMA characterizes the appreciation of the Debtor's home as a "windfall." The Court disagrees. An increase (or decrease) in the value of an asset is an intrinsic benefit (or risk) of ownership and absent further action by the owner, is not a "windfall," i.e., unexpected income. The change in value standing alone is simply an incident of ownership. It does not affect the Debtor's ability to pay based on her future earnings because the Debtor has not experienced any change in income. A number of courts, including the *Barbosa* court, have considered post-confirmation sales of property which appreciated post-petition and have concluded that the debtor must make the proceeds available to unsecured creditors. *In re Barbosa,* 236 B.R. at 554. In this case, *the fact that the Debtor has not realized proceeds from the appreciation of her home distinguishes her case from others and is outcome determinative.*

245 B.R. at 767, n. 6 (emphasis supplied).

In the instant case, not only does the order of confirmation provide that the appreciation in value of the Debtor's Property is property of the estate, the Debtor, through her Motion to Refinance, is seeking to realize proceeds from the appreciation of her Property and keep proceeds in excess of the amount required to satisfy the balance of her plan payments, attorneys' fees and other costs for herself. This violates the precepts articulated by the First Circuit in *Barbosa v. Soloman,* and this Court cannot and will not permit it.

## IV. CONCLUSION

For the following reasons, the Court reiterates its bench ruling of September 9, 2004. The Court shall enter an order requiring the Debtor to file an amended Chapter 13 plan and amended Schedules I and J within 30 days after the entry of any orders affirming this Court's order.