**In re Marlvin and Glairretta DREW, Debtors.**

**Lawana R. Ashby–Fox, Debtor.**

**Nos. 02 B 49482, 03 B 09476.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

June 23, 2005.

Joanne Coshonis, on behalf of trustee, for Movant.

Patrick J. Semrad, for Respondent.

### MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

These matters come before the Court on the motions of Marilyn O. Marshall, the Standing Chapter 13 Trustee (the "Trustee"), to modify the confirmed Chapter 13 plans of Marlvin and Glairretta Drew and Lawana R. Ashby–Fox (collec-tively, the "Debtors," individually, the "Drews" and "Ms. Ashby–Fox") pursuant to 11 U.S.C. § 1329 and the responses in opposition filed by the Debtors. Both matters involve a common issue: whether the Debtors' confirmed plans can be amended under § 1329 to increase the dividends payable to the pre-petition unse-cured creditors as a result of the Debtors refinancing their respective real proper-ties and receiving lump sum cash pay-ments as part of the refinancing. The Trustee contends that the cash payments should be added to the total pot that the Debtors should be required to pay under the terms of their confirmed plans. For the reasons set forth herein, the Court grants the Trustee's motions over the ob-jections of the Debtors because the Debt-ors have not fully performed and consum-mated the terms of their confirmed plans.

### I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain these matters pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. They are core proceedings under 28 U.S.C. § 157(b)(2)(A), (L) and (O).

### II. FACTS AND BACKGROUND

The Court, for purposes of resolving common legal issues, has consolidated the two motions to modify filed by the Trustee, one in the joint case of In re Drew, (02 B 49482), and the other in the case of In re Ashby–Fox, (03 B 09476). The parties have stipulated to most of the facts.

The Drews filed their Chapter 13 peti-tion on December 16, 2002. On March 12, 2003, their plan was confirmed. Pursuant to the plan, the Drews were to pay $350.00 per month to the Trustee for a minimum

term of thirty-six months (totaling $12,600.00) in order for unsecured creditors' allowed claims to receive a minimum ten percent dividend. The order confirming the plan provided that if the unsecured creditors would receive one hundred percent of their allowed claims, they could pay less than the aggregate sum of $12,600.00. At the time the Trustee's motion was filed, January 24, 2005, the Drews had not made thirty-six months of payments under the confirmed plan. Rather, they paid a total of $9,380.00.

Ms. Ashby–Fox filed her Chapter 13 petition on March 3, 2003. On May 7, 2003, her plan was confirmed. The plan required her to make monthly payments of $190.00 for a minimum term of thirty-six months (totaling $6,840.00) in order for her unsecured creditors to receive at least ten percent of their allowed claims. Moreover, the order confirming the plan provided for a lesser total to be paid if unsecured creditors would receive one hundred percent of their allowed claims. Ms. Ashby–Fox contends that as of March 2, 2005, she paid a total of $7,020.84, which is more than the $6,840.00 in monthly payments of $190.00 for thirty-six months. Thus, she maintains that her payments allow unsecured creditors a dividend of approximately forty-seven percent on their claims. She argues that she has paid more than is needed for the minimum ten percent dividend to the unsecured creditors, and has successfully complied with the terms of her confirmed plan. The Court notes that the receipt information page, printed from the Trustee's website, indicates that a total of $7,020.84 was paid to the Trustee after the receipt of $3,215.84 on February 10, 2005, after the instant motion was filed. Thus, at the time the Trustee filed the motion on January 24, 2005, Ms. Ashby–Fox's confirmed plan had not been fully consummated.

. On January 19, 2005, the Court granted the Debtors' motions to obtain credit in order to refinance their properties. In the Drews' case, the Trustee alleges that at the time of confirmation, their real estate was valued at $90,000.00, and they refinanced it for $105,000.00. In the case of Ms. Ashby–Fox, the Trustee alleges that she valued her property for confirmation purposes at $90,000.00, and she refinanced the property for $102,860.00. Hence, the Trustee seeks to amend each plan to increase the effective dividends to unsecured creditors by the cash amount of the refinancing proceeds received by the Debtors that exceeds · the pay off of the extant mortgages or other liens encumbering the properties.

### III. ARGUMENTS OF THE PARTIES

In the Debtors' responses, they concede the valuations of the subject properties that were scheduled at the time of confirmation, but assert that the Trustee is now estopped from challenging those valuations at this point. They contend that the higher valuations, for refinancing purposes, show that the real properties have appreciated over the passage of time since confirmation. The Debtors argue that they should be able to keep the surplus equity and should not be required to pay those funds to the unsecured creditors and increase their dividends. The Debtors contend that granting the Trustee's motions would effectively discourage other debtors from seeking relief under Chapter 13. They also argue that in the event of conversion, 11 U.S.C. § 348(f) makes it clear that any post-petition equity is not property of the estate and remains with the debtor. In such event, unsecured creditors would receive none of the proceeds from their refinancing efforts. Moreover, the Debtors point out that the refinancing proceeds are not included as disposable income under 11 U.S.C. § 1325(b). They

argue that there is nothing prohibiting them from paying their Chapter 13 plans off early, but to grant the Trustee's motion would have a chilling effect on debtors refinancing their properties in the times of favorable refinancing terms and lower interest rates, and thereby provide a disincentive for Chapter 13 debtors seeking to exit the bankruptcy system sooner rather than later.[1]

The Trustee replies that paying off these plans early out of the refinancing proceeds would violate the disposable income requirement of § 1325(b)(1) if the Debtors do not commit all of their disposable income for the minimum term of three years as prescribed by 11 U.S.C. § 1322(d), § 1325(b)(1)(B) and the text of the confirmation orders. In addition, the Trustee contends that the Debtors' objections seek to effectively amend their confirmed plans and reduce the amounts to be paid by them without proper leave of court. Further, the Trustee maintains that the proceeds of refinancing constitute property of the bankruptcy estates and are not part of the required monthly plan payments that the Debtors must make. However, the Trustee points out that the confirmed plans only allow the early conclusion of payments if all allowed unsecured claims have been paid in full, which to date has not yet occurred. According to the Trustee, the motions to modify the plans satisfy the requirements of § 1329(b)(1), § 1325(a)(1), § 1325(b)(1) and § 1325(a)(3).[2] The Court will address these arguments *infra*.

## IV. DISCUSSION

■ The debtor, the trustee or any holder of an allowed unsecured claim has standing to seek modification of a plan after confirmation. *See* 11 U.S.C. § 1329(a). Specifically, § 1329 provides that:

(a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—

(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;

(2) extend or reduce the time for such payments; or

(3) alter the amount of the distribution to a creditor whose claim is provided for by the plan, to the extent necessary to take account of any payment of such claim other than under the plan.

(b)(1) Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section.

(2) The plan as modified becomes the plan unless, after notice and a hearing, such modification is disapproved.

(c) A plan modified under this section may not provide for payments over a period that expires after three years after the time that the first payment under the original confirmed plan was due, unless the court, for cause, ap-

---

1. In support of their objections, the Debtors cite *Warren v. Peterson*, 298 B.R. 322 (N.D.Ill. 2003); *In re Golek*, 308 B.R. 332 (Bankr. N.D.Ill.2004); and *In re Wegner*, 243 B.R. 731 (Bankr.D.Neb.2000).

2. The Trustee principally relies on *In re Witkowski*, 16 F.3d 739 (7th Cir.1994); *In re*

*Powers*, 140 B.R. 476 (Bankr.N.D.Ill.1992); *In re Kieta*, 315 B.R. 192 (Bankr.D.Mass. 2004); *In re Morgan*, 299 B.R. 118 (Bankr. D.Md.2003); *In re Fields*, 269 B.R. 177 (Bankr.S.D.Ohio 2001); and *In re Flaming*, No. 02–03680, 2003 WL 22848925 (Bankr.D.Idaho Nov.10, 2003).

proves a longer period, but the court may not approve a period that expires after five years after such time.

11 U.S.C. § 1329.

■ Section 1329(a)(1) expressly permits post-confirmation plan modifications to increase the amount of payments on claims of a particular class. The Trustee has standing under § 1329 to seek post-confirmation modification of the plans in order to increase the dividends to the unsecured claim holders. *In re Powers*, 140 B.R. 476, 478 (Bankr.N.D.Ill.1992) (granting the trustee's timely motion to increase the dividend to unsecured creditors from fifty-four percent to one hundred percent where the debtor received proceeds from the sale of her interest in real property; denial of the motion would have permitted completion of the plan in fifteen months); *In re Fields*, 269 B.R. 177, 179 (Bankr.S.D.Ohio 2001) (granting trustee's motions to increase payments when percentage plans completed in less than thirty-six months without regard to whether the disposable income test applied).

The Seventh Circuit Court of Appeals addressed § 1329 in *In re Witkowski*, 16 F.3d 739 (7th Cir.1994). Inasmuch as the Court is bound by the holding of this case, a review of this decision is appropriate. The debtor's confirmed plan provided for monthly payments of $600.00 for forty-seven months. *Id.* at 741. Further, the plan provided a ten percent dividend to unsecured creditors. *Id.* The plan included the following language: "The term of the Plan shall be 47 months or such lesser time as may be required to pay all claims as provided above." *Id.* Several creditors failed to file claims, and the trustee filed a motion to modify the plan to increase the dividend to unsecured creditors to nineteen percent. *Id.* By the express terms of the statute, modifications are only allowed in very limited circumstances to accomplish the results covered by § 1329(a)(1), (2), or (3). *Id.* at 745. The court rejected the argument that there had to be a substantial change of circumstance before modification could properly occur, noting that § 1329 provides for an absolute right to seek a modification. *Id.* at 744. Thus, the modification of the confirmed plan was not an abuse of discretion despite a lack of any change in the debtor's financial circumstances. *Id.* at 746. *Witkowski* further opined that Congress provided in § 1329 a "mechanism to change the binding effect of § 1327 when it passed § 1329 to allow for modifications.... Congress did not intend ... res judicata to apply to § 1329 modifications." *Id.* at 745. Further, ₒ*Witkowski* noted that relief under § 1329 is only available if the requirements of § 1322(a), § 1322(b), § 1325(a) and § 1323(c) are met at the time of modification. *Id.* While *Witkowski* held that a court can modify a confirmed plan despite a lack of change in the debtor's financial circumstances, it did not address the specific issue at bar: whether the Court can modify the confirmed plans to increase the dividends payable to the unsecured creditors as a result of the Debtors receiving lump sum cash payments from the refinancing of their real properties.

■ It is undisputed that the Debtors have appropriately sought and received approval to refinance the mortgages on their homes that they are attempting to keep and save in the context of their confirmed Chapter 13 plans. The interplay of 11 U.S.C. § 1327(c), § 541 and § 1306(a)(1) deals with and provides an interesting interaction with the expanded definition of property of the estate in a Chapter 13 case. This is because § 541 broadly defines property of the estate to include "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). In addition,

§ 1306(a)(1) includes "all property of the kind specified in [§ 541] that the debtor acquires after the commencement of the case but before the case is closed, dismissed or converted...." 11 U.S.C. § 1306(a)(1). Thus, property that a Chapter 13 debtor acquires post-petition, like the refinancing proceeds the Debtors received in the cases at bar, becomes property of the estate pursuant to § 1306, in contrast to the post-petition acquisitions that do not become part of a Chapter 7 or Chapter 11 estate. Accordingly, it has been held that a Chapter 13 estate can include gifts, inheritances and windfalls that are acquired by the debtor post-petition. *See, e.g., In re Euerle*, 70 B.R. 72 (Bankr.D.N.H.1987) (inheritance); *In re Koonce*, 54 B.R. 643 (Bankr.D.S.C.1985) (lottery winnings); *Doane v. Appalachian Power Co. (In re Doane)*, 19 B.R. 1007 (W.D.Va.1982) (money loaned to the debtor by a relative).

There exists a statutory tension between § 1306(a)(1) and the vesting provisions of § 1327(c). Although § 1327(c) notes that property vesting in the debtor includes all property acquired after the petition is "free and clear of any claim or interest of any creditor provided for by the plan," some courts have left room for the re-creation of the Chapter 13 estate after confirmation and hold that the estate continues and can be refilled with property acquired after confirmation. *See, e.g., In re Nott*, 269 B.R. 250 (Bankr.M.D.Fla. 2000) (although property of the estate at confirmation vested in debtor pursuant to § 1327(b), a $300,000.00 inheritance one year after confirmation is property of the estate pursuant to § 1306(a)).

■■ The Seventh Circuit has stated that § 1306(a)(2) provides that upon confirmation, the plan returns so much of the estate to the debtor's control as is not necessary for the fulfilment of the plan.

*Black v. United States Postal Serv. (In re Heath)*, 115 F.3d 521, 524 (7th Cir.1997). Under that dictum, the portions of the refinancing proceeds intended by the Debtors to be paid to complete their confirmed plans are part of the continuing estates under § 541 and § 1306(a)(1). Thus, the Court holds that the refinancing proceeds are part of the Debtors' bankruptcy estates post-confirmation because those proceeds were acquired by the Debtors for use in making payments under their confirmed plans.

■ For purposes of § 1329, timing of the motion is critical and it must be filed before a debtor has completed payments under the confirmed plan. On rare occasions, Chapter 13 debtors complete their plans sooner than expected, which effectively bars a § 1329 motion to increase the dividends to unsecured claimants. *In re Chancellor*, 78 B.R. 529, 531 (Bankr. N.D.Ill.1987); *Casper v. McCullough (In re Casper)*, 154 B.R. 243 (N.D.Ill.1993). *Casper* held that where the debtor had previously tendered a lump sum to the trustee after confirmation in an amount sufficient to pay the balance remaining under the confirmed plan, it was too late for the trustee, after receiving such monies from the debtor, to move two days later to modify the plan. *Casper* pertinently noted that:

when a debtor completes his or her obligation to a class of creditors as provided in a plan, his or her payments are complete. The bankruptcy courts should look to the substance of the plan and the nature of the debtor's total obligation to the allowed creditors in order to discern when payments under a plan are completed.... [T]his court does not consider the number of payments or the duration of a plan as controlling.... Accordingly, the "completion of payments" under 11 U.S.C. § 1329(a) occurs when

the debtor pays to the Trustee the full amount the plan requires the debtor to pay which satisfies the percentage the debtor proposed to pay to a class of creditors.

*Id.* at 246–47 (citations omitted).

One leading authority has noted that "[t]endering the balance required by the plan completes the plan under *Casper* and cuts off any motion by the trustee or the holder of an allowed unsecured claim to increase payments to creditors or to extend the plan." 3 KEITH M. LUNDIN, CHAPTER 13 BANKRUPTCY, 3D ED. § 253.1 at 253–10 (2000 & Supp.2004) (footnote omitted).

Thus, timing is everything with respect to § 1329 motions to modify. In both of these cases, the Trustee filed the § 1329 motions prior to the time the Debtors had tendered all of their payments under the terms of their confirmed plans. Therefore, the motions at bar are timely under *Casper.*

The situation in these cases is in marked contrast to *In re Sounakhene,* 249 B.R. 801 (Bankr.S.D.Cal.2000). There, the trustee's motion to modify the plan to increase payments was untimely because the debtors had tendered a lump sum payment to the trustee from the refinancing of their home to pay the plan in full before the trustee filed the motion. *Id.* at 804. *See also In re Phelps,* 149 B.R. 534 (Bankr. N.D.Ill.1993) (precluding a trustee's motion to modify to increase the amount paid to unsecured creditors once the debtor paid the amount necessary to satisfy the percentage provided in the plan).

The same result obtained by refinancing has occurred via the liquidation of property by sale or by substitution of insurance proceeds or by settlement of litigation which produces opportunities for motions to modify to increase payments to creditors. *See, e.g., In re Barbosa,* 236 B.R.

540 (Bankr.D.Mass.1999), *aff'd on other grounds,* 243 B.R. 562 (D.Mass.2000), *aff'd,* 235 F.3d 31 (1st Cir.2000) (granting modification of confirmed plan to permit proceeds from the sale of real property to fund an increase in payments to unsecured creditors); *In re Solis,* 172 B.R. 530 (Bankr.S.D.N.Y.1994) (allowing the modification to pay creditors $40,000.00 from the post-confirmation sale of the debtor's medical practice to avoid a "windfall" to the debtor); *In re Bostwick,* 127 B.R. 419 (Bankr.N.D.Ill.1991) (granting the trustee's motion to modify the confirmed plan to require the debtor to pay one hundred percent of allowed unsecured claims when the debtor successfully objected to a claim and several other creditors did not file proofs of claim).

Section 1329(a)(1) can be invoked by trustees or unsecured creditors who timely move to increase a debtor's payments under a confirmed plan where the debtor's financial situation has improved. In his treatise, Judge Lundin aptly stated that:

There is obvious fairness to requiring debtors to share good fortune with creditors. This is the same fairness that permits Chapter 13 debtors to reduce payments to creditors when circumstances disable the debtor from completing the original plan. . . . It is of more than academic interest that were the debtor to convert to Chapter 7 after winning a lottery or realizing new income, the postpetition assets and income belong to the debtor and would not be available for distribution to creditors in the Chapter 7 case. Perhaps the sharing of postpetition good fortune is seen by some courts as the cost of the Chapter 13 discharge. . . . [C]ases support the proposition that an allowed unsecured claim holder [or the trustee] can force the debtor with improved financial condition to a choice: accept an increase in

payments to creditors or get out of Chapter 13.

3 Lundin, § 266.1 at 266–14 (footnotes omitted). *See also id.* at 266–1–5 (collecting cases for the proposition that courts have aggressively allowed trustees and unsecured claim holders to modify plans to increase payments—often over the strong opposition of debtors). It is "not the design of the Bankruptcy laws to allow the Debtor to lead the life of Riley while his creditors suffer on his behalf." *In re Bryant,* 47 B.R. 21, 26 (Bankr.W.D.N.C. 1984).

One recent case, not cite by any party, *In re Murphy,* Nos. 03–15596–SSM, 03–12055–SSM, 2005 WL 327099 (Bankr. E.D.Va. Jan.12, 2005), discussed the point that a postconfirmation refinancing, in contrast to a sale, involves a new loan or debt which balances the cash received, and denied a motion similar to the motions at bar. The *Murphy* court found the refinancing of a debtor's loan to be in contrast to a post-petition sale where the debtor receives the net equity for the sold asset without incurring a corresponding new debt. *Murphy* aptly noted that paying the creditors' claims earlier did not effectively injure them because of the time value of money: a dollar received today has more value than a dollar received tomorrow or later. *Id.* at *8. The *Murphy* case was cited with approval by *Miller v. Loan Star Mortgage, Inc. (In re Miller),* 325 B.R. 539 (Bankr.W.D.Pa.2005) (overruling the trustee's objection to the debtor's motion to refinance and pay the plan off early).

The Court respectfully declines to follow the results in *Murphy* and *Miller.* Although the refinancing by the Debtors in these cases involved new debt incurred by them, the refinancing transactions were not necessarily "washes" where the increased values of the subject properties were completely offset by the new loans.

The record here is not at all comprehensive, but the Court doubts that the new loans made to these Debtors were at a one hundred percent loan to value ratio. Indeed, most real estate lenders in this District lend at a much lower loan to value ratio to provide some residual cushion in the event of subsequent default by the debtor with resultant foreclosure of the new mortgage. Thus, although the record is not at all clear, it is probable that each property's value has increased substantially more than the amounts loaned. Hence, there is likely additional equity in each property that the Debtors enjoy and will retain because the properties are not being sold. The Trustee's motions effectively seek to compel the Debtors to contribute so much of that equity to the unsecured creditors' dividends as the Debtors are cashing out via the refinancing. Section 1329 permits this result.

Logic compels a similar result in refinancing situations, like those at bar, where the Debtors seek to have the benefits of increased equity in the real properties and more favorable financing terms, to those cases where a debtor's fortunes have improved post-confirmation by selling property at a substantial gain, winning a lottery, receiving a substantial inheritance or other similar good fortune. Section 1329 provides a mechanism for the Trustee to "up the ante" for the benefit of the unsecured creditors if she so moves in time, just as the statute is more frequently invoked by debtors whose situations have worsened post-confirmation and appropriately seek to effectively reduce the unsecured dividends. The statute can work either way.

The Court is unpersuaded by the Debtors' objections to the motions at bar and rejects their arguments. The statutory text of § 1329 allows for plan payments to be appropriately increased or decreased

for the statutory grounds stated: the rise or fall of equity in property is not one of the limiting factors enumerated in the text. There has been no evidence proffered to support the speculative argument that increasing the dividends to unsecured creditors will somehow discourage debtors from either filing Chapter 13 petitions or serve as a disincentive for debtors to seek to exit the system sooner. That is because Chapter 13 is entirely voluntary for eligible debtors who cannot be involuntarily petitioned into a Chapter 13 case. In addition, the possibility of relief under § 1329 only occurs after a Chapter 13 debtor's plan has achieved the major hurdle of being confirmed in the first instance, and many Chapter 13 cases never get to that point. Moreover, of those that do, the Court has anecdotally observed over the past seventeen years that the vast majority of § 1329 motions are brought by debtors who seek to lower the dividend to unsecured creditors because of their subsequent adverse circumstances.

Furthermore, it is of no consequence that § 348(f)(1)(B) [3] would lock in valuations of property and of allowed secured claims in the Chapter 13 case and apply those values in a converted case (usually a Chapter 7) because § 1329 only applies in a confirmed Chapter 13. Thus, the potential result under § 348(f) is inapposite to the cases at bar, which have not been converted. If the Debtors are unhappy with the result here, they can always voluntarily dismiss their Chapter 13 cases. Chapter 7 debtors, on the other hand, do not enjoy such a right to voluntarily dismiss their cases. The effect of § 1329 is to allow confirmed Chapter 13 plans to be modified either to reduce the total price paid by debtors for the benefits received under Chapter 13, or as here, to increase that price. After all, the greater benefits of a Chapter 13 "superdischarge" under 11 U.S.C. § 1328(a) should logically command a higher price than a Chapter 7 discharge under 11 U.S.C. § 727. The results to debtors and creditors alike are markedly different depending on which chapter of the Bankruptcy Code is selected.

The Court agrees that the text of § 1329(b)(1) does not cross reference or expressly incorporate by reference the disposable income requirement of § 1325(b), and thus concurs with the Debtor on this point. *See In re Golek,* 308 B.R. 332 (Bankr.N.D.Ill.2004). However, merely because the refinancing proceeds, as a one time debt restructuring of the debt securing a capital asset, should not be considered additional disposable income does not serve to defeat the Trustee's motions.

The Court agrees with many of the Trustee's points and notes that the Trustee is correct in asserting that none of the case law cited by the Debtors involved the construction or application of § 1329. The Court agrees with the Trustee that debtors need to commit and pay the functional equivalent total of their monthly net disposable income for at least thirty-six months as projected at the time of confirmation over the life of the plan. If that total can be paid sooner rather than later, creditors benefit by having dividends in hand sooner and can thereby enjoy the time value of money rather than awaiting

---

3. Section 348(f)(1)(B) provides that:
(f)(1)Except as provided in paragraph (2), when a case under chapter 13 of this title is converted to a case under another chapter under this title—
(B) valuations of property and of allowed secured claims in the chapter 13 case shall apply in the converted case, with allowed secured claims reduced to the extent that they have been paid in accordance with the chapter 13 plan.
11 U.S.C. § 348(f)(1)(B).

payment. What the Trustee seeks to do in these matters is to increase the effective dividends for unsecured creditors by the amount of "equity" in the properties that the Debtors seek to take out in cash from their approved refinancing. The Court finds that § 1329 permits this because the Debtors had not paid off their confirmed plans prior to the filing of the motions.

On the facts of these cases, the Court finds that the Trustee's motions are timely and the Trustee has won the proverbial race to the courthouse. The Debtors' plan terms will be extended by the number of months it will take them to pay in the amount of their monthly plan payments equal to the total of the lump sums they have or will receive from the previously approved refinancing of their real properties.

## V. CONCLUSION

For the foregoing reasons, the Court hereby grants the Trustee's motions to modify the Debtors' confirmed plans under § 1329(a)(1).

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.