**In re Terry P. BRUMM, Debtor.**

**No. 3:03–BK–04184.**

United States Bankruptcy Court, N.D. West Virginia.

July 9, 2006.

Aaron C. Amore, James T. Kratovil, Kratovil & Amore PLLC, Charles Town, WV, for Debtor.

## *MEMORANDUM OPINION*

PATRICK M. FLATLEY, Bankruptcy Judge.

Terry P. Brumm (the "Debtor") filed a motion to refinance his principal residence and payoff his confirmed Chapter 13 plan early. The Chapter 13 trustee (the "Trustee") objects to the motion unless the Debtor modifies the plan's dividend to unsecured creditors from 0% to 100%. To pay unsecured creditors 100%, the Trustee estimates that the Debtor must commit an additional $11,705 to his Chapter 13 plan.

The court held a telephone conference on this matter on March 21, 2006, at which time the court took the matter under advisement and ordered post-hearing briefs. After considering the arguments of the parties and the relevant law, the court will grant the Debtor's motion to refinance and overrule the Trustee's objection.

## I. BACKGROUND

On November 24, 2003, the Debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code. On Schedule A, the Debtor listed his principal residence as having a value of $73,000. On Schedule D, the Debtor stated that the secured debt on his principal residence was $54,300. The Trustee, however, states that the total

amount of claims secured by the Debtor's residence at the time of confirmation was $72,851.

The court confirmed the Debtor's pot plan of reorganization on June 2, 2004, which obligated the Debtor to make sixty monthly payments totaling $17,058. The order of confirmation also provides that the Debtor is to submit statements of income on an annual basis to the Trustee, who may then petition the court to increase the monthly payments for "cause." In her objection to the Debtor's proposed refinancing, the Trustee states that the total amount of the payments under the confirmed plan is insufficient to pay any dividend to the unsecured creditors of the estate.

By March 6, 2006, the Debtor's principal residence had apparently increased in value and the Debtor filed a motion to refinance his property at $84,000.[1] The Debtor proposes to use the proceeds of the refinancing to both cure a plan arrearage and to payoff his Chapter 13 plan early. The Trustee estimates that—pursuant to the terms of the confirmed plan—the Debtor still owes approximately $10,949. Notwithstanding the terms of the confirmed plan, the Trustee seeks to have the Debtor pay an additional $14,205 to unsecured creditors, which would provide them with a 100% dividend. If the Trustee prevails, the total payments under the Debtor's Chapter 13 plan would be $28,763.

## II. DISCUSSION

The Trustee argues that the Debtor must increase the dividend to unsecured creditors on the basis of the disposable income test of § 1325(b). The Trustee also argues that the Debtor's proposed refinancing and early plan payoff requires a modification of the confirmed plan, and that, to meet the liquidation requirements of 11 U.S.C. § 1325(a)(4), the Debtor must increase the dividend payable to unsecured creditors.

## A. The Terms of the Plan

■ As an initial matter, the court must determine if the Trustee is authorized to demand the proceeds of the Debtor's proposed refinancing based on the express language of the Debtor's Chapter 13 plan. *See* 11 U.S.C. § 1327(a) ("The provisions of a confirmed plan bind the debtor and each creditor . . . ."); *In re Kieta*, 315 B.R. 192, 194, 195 (Bankr.D.Mass.2004) ("[I]t is abundantly clear that the order of confirmation entered in this case on February 13, 2002 contemplated that equity is property of the estate.").

The order of confirmation in this case provides that the "Debtor shall submit statements of income on an annual basis to the Trustee, which amount of income shall be reviewed by the Trustee who may petition the court to increase the monthly payments for cause." Here, however, the Debtor will not experience any increase in income due to the proposed refinancing— the Debtor is incurring debt. *E.g., Commissioner v. Indianapolis Power & Light Co.*, 493 U.S. 203, 207, 110 S.Ct. 589, 107 L.Ed.2d 591 (1990) ("[I]t is settled that receipt of a loan is not income to the borrower."); *In re Forte*, 341 B.R. 859, 864–65 (Bankr.N.D.Ill.2005) ("[R]efinancing proceeds are not income."). The Trustee could have negotiated with the Debtor to include language in the confirmed plan that captured any future appreciation in the Debtor's real property for the creditors of the estate, but that was not done in this case. *See Kieta*, 315 B.R. at 194 (reciting the terms of the confirmed plan,

1. Other than the amount of the Debtor's proposed refinancing, no party has presented the court with evidence on the current fair market value of the property.

which stated that "all property of the estate as defined in 11 U.S.C. §§ 541 and 1306, including, but not limited to, any appreciation in the value of real property owned by the debtor, as of the commencement of the case, shall remain property of the estate during the term of the plan . . . .").

Therefore, nothing in the language of the order of confirmation gives the Trustee the ability to demand the proceeds of the Debtor's proposed refinancing because the Debtor has not agreed to submit the value of post-confirmation real property appreciation to the repayment of creditors and because the proceeds of that refinancing will not be income to the Debtor.

## B. Section 1325(b)

■ The Trustee argues that § 1325(b) of the Bankruptcy Code provides her with a basis to demand a higher payout to unsecured creditors even after confirmation of the Debtor's plan. The court disagrees.

Prior to the 2005 amendments to § 1325(b), it provided that "[i]f the trustee . . . objects to the confirmation of the plan, then the court may not approve the plan unless . . . the plan provides that all of the debtor's projected disposable income to be received in the three-year period . . . will be applied to make payments under the plan." 11 U.S.C. § 1325(b)(1). By the statute's express language, it requires that an objection be made at or before confirmation of the plan. *E.g., Midkiff v. Stewart (In re Midkiff)*, 342 F.3d 1194, 1202 (10th Cir.2003) (stating that the disposable income requirement in subsection (b)(1)(B) is conditional on the trustee or a holder of an allowed secured claim making an objection; and because no relevant party objected to the plan confirmation the ensuing conditions were not relevant); *In re Smith*, No. 01–44619, 2004 WL 41401 at *4, 2004 Bankr.LEXIS 11 at *16 (Bankr. W.D.Mo. Jan. 6, 2004) (stating that " § 1325(b) requires the Trustee to object to confirmation prior to the invocation of the disposable income test."); *In re Grissom*, 137 B.R. 689, 691 (Bankr.W.D.Tenn. 1992) ("The time to require the application of the disposable income test is established by § 1325(b) as being at the confirmation hearing, and its application is triggered in only one way, that is, by the filing of an objection to the plan's confirmation.").

In this case, the Trustee did object to the confirmation of the Debtor's plan, however, the Trustee's objection was not on the basis of the disposable income test of § 1325(b)(1). The objection was based on the Debtor's failure to provide for a particular claim in the plan and on the basis that the Debtor proposed to treat an unsecured claim as a secured claim. Both of those objections were resolved at confirmation. Unless a trustee or unsecured creditor specifically objects to confirmation of a plan under § 1325(b), that subsection is never invoked. *E.g.,* 11 U.S.C. § 1325(a) ("Except as provided in subsection (b), the court shall confirm a plan . . . ."); *Petro v. Mishler*, 276 F.3d 375, 378 (7th Cir.2002) ("If[§ 1325(a) ] requirements are met, and, as here, the Trustee fails to object to the plan pursuant section 1325(b), the statute states that the plan 'shall' be approved."). Accordingly, § 1325(b) requires the Trustee to specifically object to confirmation of the Debtor's plan on that basis at or before the confirmation hearing—because the Trustee did not do so in this case, § 1325(b) is not applicable.

## C. Refinancing and Plan Modification

■ The Trustee argues that a refinancing of a home mortgage and an early plan payoff constitutes a modification of a confirmed plan. As a requirement of modification, all the requirements of 11 U.S.C.

§ 1325(a) must be met, which, the trustee argues, requires that the proceeds of the Debtor's proposed refinancing be used to repay pre-petition unsecured creditors.

Before the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, § 1329(a) listed three grounds for modifying a confirmed plan:

(a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—

(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;

(2) extend or reduce the time for such payments;

(3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan.

11 U.S.C. § 1329(a).

■ In the Fourth Circuit, res judicata applies to motions to modify confirmed plans; therefore, there must be an unanticipated, substantial change in circumstances before a confirmed plan may be modified. *In re Arnold,* 869 F.2d 240, 243 (4th Cir.1989) ("The doctrine of res judicata bars an increase in the amount of monthly payments only where there have been no unanticipated, substantial changes in the debtor's financial situation."); *In re Butler,* 174 B.R. 44, 47 (Bankr.M.D.N.C. 1994) ("[T]here is no reason why either a creditor or a debtor should be permitted to relitigate issues which were decided in the confirmation order or which were available at the time of confirmation but not raised by the parties.").

■ To have an unanticipated, substantial change in circumstances between the date of confirmation and the date of modification means that the debtor's current circumstances must have been unknown at the time of the confirmation—it is an objective test. *E.g., Arnold,* 869 F.2d at 243 (finding that a $120,000 increase in income over two years was an unanticipated and substantial change in circumstances); *In re Stinson,* 302 B.R. 828, 832 (Bankr. D.Md.2003) (finding an unanticipated, substantial change in circumstances when the debtor sold real property that was to be retained under the terms of the plan); *In re Furgeson,* 263 B.R. 28, 37–38 (Bankr. N.D.N.Y.2001) ("In the instant proceeding, the acquisition of $ 5,800 by the Furgesons is clearly both unanticipated, considering it was not possible at confirmation for the Trustee to foresee the prosecution of the Debtors' § 362(h) claim … and substantial, considering …. the increase in the dividend receipt by the unsecured creditor class from 5% to 31% …. ").

Some authority exists holding that a debtor's refinancing of a home residence and then proposing an early plan payoff constitutes a plan modification. In the case of *In re Keller,* 329 B.R. 697, 698 (Bankr.E.D.Cal.2005), the debtors confirmed a plan requiring them to make 48 monthly payments of $2,175 to the trustee for distribution to their secured and unsecured creditors. Their plan also provided that "[u]nless all allowed unsecured claims are paid in full, the plan shall not terminate earlier than the stated term or 36 months, whichever is longer." *Id.* The plan was to be funded by the debtor's projected disposable income. Based on the scheduled claims, unsecured creditors could expect a 31.5% dividend. *Id.*

After 14 months of plan payments, the debtors in *Keller,* refinanced their home and requested authority to payoff the

chapter 13 plan without seeking a modification. *Id.* at 699. The bankruptcy court refused to allow the debtor to payoff the chapter 13 plan early—unless unsecured creditors were paid in full—reasoning that:

(1) The court would not have allowed the debtor to make lesser monthly payments without a modification even if the total amount paid under the plan at the end of the 48 months was the same—the debtor is bound by the plan provisions, including the amount of the regular monthly payments;

(2) Section 1322(a)(1) requires that a plan provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan. Likewise, under section 1322(b)(8) the debtor's earnings may be supplemented by property of the estate or of the debtor to pay claims. It makes little sense to require that a plan specify how it will be funded only to permit the debtor to perform differently than required by the plan;

(3) When a debtor proposes a lump sum payment, the debtor is preempting the right of the trustee and the unsecured creditors to propose a modified plan during the remaining term of the plan should the circumstances warrant a modification;

(4) If a debtor wants to sell property and use the proceeds to fund the plan, that provision should be part of the original plan. No good reason exists to permit the debtor to preclude the trustee or an unsecured creditor from raising a section 1325(b) objection by promising to fund payments over a period of years, and then, as soon as the plan is confirmed, ending the plan by making the lump sum payment.

*Id.* at 699–700.

Likewise, in the case of *In re Drew,* 325 B.R. 765, 772 (Bankr.N.D.Ill.2005), the court determined that a debtor's refinancing was a modification of the debtor's Chapter 13 plan on the grounds that realizing the value of appreciation through refinancing was akin to "those cases where a debtor's fortunes have improved post-confirmation by selling property at a substantial gain, winning a lottery, receiving a substantial inheritance or other similar good fortune." Also, the court could not discern a distinction between a motion to modify filed by the Debtors to reduce plan payments based on a loss of income and a motion by the trustee to increase the plan payout consistent with the increased value of the debtor's appreciated property. *Id.* ("The effect of § 1329 is to allow confirmed Chapter 13 plans to be modified either to reduce the total price paid by debtors for the benefits received under Chapter 13, or as here, to increase that price. After all, the greater benefits of a Chapter 13 'superdischarge' under 11 U.S.C. § 1328(a) should logically command a higher price than a Chapter 7 discharge under 11 U.S.C. § 727.").[2]

In contrast, other courts have reasoned that a debtor's refinancing and early plan payoff does not constitute a modification of

---

**2.** The Trustee has cited one case from the District of Maryland that purports to hold that a refinancing of property constitutes a plan modification. *In re Martin,* No. 02–53539 (Bankr.D.Md.2002). The court has reviewed the docket in that case and can find no written opinion on that issue. On January 10, 2005, the docket merely reflects that a hearing was held and that the matter was resolved. Eleven days later, an order was entered approving a modified plan. No written indication is present of the reasons behind the court's order, and it is not clear whether the order was one of stipulation or considered decision.

a confirmed plan on the basis that the debtor is not proposing to change the substantive conditions of the confirmed plan. For example, in *Miller v. Loan Star Mortg., Inc. (In re Miller)*, 325 B.R. 539, 540 (Bankr.W.D.Pa.2005), the court confirmed a debtor's plan that cured a mortgage arrearage but did not propose to pay any dividend to unsecured creditors. When the debtor subsequently proposed to refinance her property and payoff the Chapter 13 plan, the trustee objected that the proposed refinancing constituted a plan modification and that the debtor had to remain in the chapter 13 plan a minimum of 36 months or pay her unsecured creditors a 100% dividend. *Id.* The court, however, did not perceive the debtor's refinancing and early plan payoff to be a plan modification when the debtor did not seek to change the total plan payment amount and when the debtor's proposal actually increased the economic worth of the plan to creditors by paying them early. *Id.* at 542. The court further reasoned that it is appropriate to modify a plan to increase distributions when a change in the debtor's financial condition is substantial and the magnitude of the change could not have reasonably been anticipated at the time of confirmation, but there was no showing that the debtor's financial fortunes had changed. *Id.* The debtor was merely trading one obligation for another. *Id. Accord, In re Murphy*, 327 B.R. 760, 770 (Bankr. E.D.Va.2005) (stating that an early plan payoff due to refinancing has no prejudicial effect on any party, and holding that the substance of the debtor's proposal must be analyzed to determine if the substance of the plan is altered in a meaningful way).

In this case, the Debtor's proposed refinancing of the Debtor's principal residence and proposed early plan payoff is not a basis for requiring a plan modification. The court reaches this conclusion for seven reasons.

First, while it is true that the court would not allow a debtor to pay a lesser dividend to unsecured creditors without obtaining a plan modification, it is also true that reducing plan payments adversely affects the unsecured creditors of the estate; thus, the substance of the Chapter 13 plan is altered. Indeed, had the Debtor originally proposed to pay a lesser sum to unsecured creditors, then an unsecured creditor or the trustee may well have objected to the plan on the basis that the debtor was not committing all of the debtor's projected disposable income pursuant to 11 U.S.C. § 1325(b).[3] It is logical that when a debtor proposes to modify a confirmed plan to pay less—as is most often the case—that the debtor be required to meet the requirements of confirmation contained in § 1325(a), which includes the liquidation test of subsection(a)(4). It is quite another matter, however, to require a modification of a confirmed plan when the substance of what the trustee and unsecured creditors bargained for at confirmation is unchanged, and the only party harmed by the early plan payoff is the debtor, who is voluntarily paying creditors more than what the confirmed plan requires. Because the confirmed plan is a binding contract, and because the debtor is free to waive a provision of that contract that is for his benefit, i.e., the right to make payments over time, the terms of the confirmed plan are not altered. *E.g., Wyler Summit Pshp. v. Turner Broadcasting Sys.*, 235 F.3d 1184, 1191 (9th Cir.2000) (holding that a party can waive a provision in a contract when that provision is for the party's sole benefit). In short, no

---

**3.** Of course, in this case the dividend to unsecured creditors is zero.

basis exists for a plan modification when a debtor voluntarily waives a benefit and proposes to pay his creditors more than what they had bargained.

Second, while the notion that an early plan payout is a plan modification (because either the timing of the plan payments is altered or the basis for funding the plan is different) has superficial appeal, that notion promotes form over substance. Indeed, taken to its logical conclusion, the argument that any alteration of a Chapter 13 plan is a plan modification would require the debtor or the trustee to file motions to modify the plan every time the debtor was a day late or a dollar short on a monthly plan payment. Likewise, every time a debtor borrowed money from a relative to make a plan payment may well require a modification of the plan because the source of plan funding has changed. This is not the practice in this district; it is doubtful that any district employs such a rule. In short, this court agrees that when a debtor does not propose to substantively alter a Chapter 13 plan then no modification of a plan is required.

■ Third, the right of a trustee or an unsecured creditor to request modification of a debtor's Chapter 13 plan under § 1329 is not immutable. The right is statutory, is generally not incorporated as a specific provision in the confirmed plan, and Congress may take away that statutory right at any time. *See generally* 16B Am.Jur.2d *Constitutional Law* § 703 (2006) ("There can, in the nature of things, be no vested right in an existing law which precludes its change or repeal."). While an early plan payoff, which leads to the entry of a discharge and the closing of the case, may curtail the statutory right of the trustee or unsecured creditor to request a modification in the future, it is not an alteration of a confirmed plan that would require modification—the inability to move for a future

modification when a plan is paid out early is a result of the operation of law and is not a bargained for exchange.

■ Fourth, the hallmark of Chapter 13 cases is the bargain between the debtor and the debtor's creditors whereby the debtor is allowed to keep pre-petition property in exchange for promising payments in the future that—at a minimum—must be at least as much as creditors would receive had the debtor filed Chapter 7 and liquidated all non-exempt assets. *See* 11 U.S.C. § 1325(a)(4). The source of future plan payments is the debtor's future earnings or other future income, § 1322(a), and the debtor is not required to commit pre-petition property to the repayment of pre-petition debts. § 1322(b)(8) ("[T]he plan may ... (8) provide for the payment of all or part of a claim against the debtor from property of the estate or property of the debtor ...."). *See also* § 109(e) (limiting eligibility to file Chapter 13 to individuals with regular income); *Cohen v. Tran (In re Tran)*, 309 B.R. 330, 338 (9th Cir. BAP 2004) ("Tran never committed the equity in his house to the plan, nor could he have been required to: § 1322(a) requires only the commitment of future earnings or income to the plan which excludes the refinance proceeds."); *McDonald v. Burgie (In re Burgie)*, 239 B.R. 406, 410 (9th Cir. BAP 1999) (same); *In re Ash'Shadi*, No. 04–55924, 2005 WL 1105039 at *1, 2005 Bankr.LEXIS 790 at *3 (Bankr.E.D.Mich. May 6, 2005) (" 'Post-petition disposable income does not include prepetition property or its proceeds. This is the chapter 13 debtor's bargain. Creditors of a chapter 13 debtor have no claim to any of these assets.' ") (citation omitted); *In re Jacobs*, 263 B.R. 39, 40 (Bankr. N.D.N.Y.2001) ("[T]he $ 20,000 plus settlement proceeds received from the Lawyers Group represents the current appreciated value of the Debtors' scheduled interest in

Colonial and C & L. The Chapter 13 trustee has no more right to that interest today than she had at confirmation simply by virtue of is appreciation in value."). In sum, requiring a plan modification on the basis of a proposed refinancing effectively commits the post-petition appreciation of pre-petition property to the repayment of creditors in contravention of the Chapter 13 bargain.

Fifth, a decision by a debtor to refinance property and thereby substitute a new debt for an old one is fundamentally different than a debtor's proposal to sell property that a debtor was to retain under the terms of a confirmed plan. Should a trustee or unsecured creditor prevail on the argument that a refinancing of property is a plan modification, then a debtor may well find that the debtor is obligated to not only pay pre-petition debts in full, but also be subject to a greater amount of post-petition debt. In essence, all the debtor has done is to eliminate the debtor's equity in property by converting it into cash. In such a case, the benefits of the fresh start and the "super discharge" are questionable. By contrast, when a debtor proposes to sell property, the debtor is not undertaking a corresponding new debt and the proceeds of the sale are truly income to the debtor rather than being a loan. For this reason, comparisons between the refinancing of pre-petition property and the sale of pre-petition property are not determinative, and the cases that the Trustee has cited stating that a sale of property constitutes a modification are inapposite. *See, e.g., In re Barbosa,* 243 B.R. 562 (D.Mass.), *aff'd,* 235 F.3d 31 (1st Cir.2000); *In re Stinson,* 302 B.R. 828 (Bankr.D.Md.

2003); *In re Morgan,* 299 B.R. 118 (Bankr. D.Md.2003). In short, by refinancing a debtor is not reaping a substantial good fortune; a debtor is merely realizing the benefits of the Chapter 13 bargain by retaining pre-petition property.

Sixth, the court can discern no reason for providing debtors with a disincentive to complete Chapter 13 plans early through refinancing. Often refinancing is done to reduce interest rates, lower payments on long term debts and provide a debtor with greater short term financial stability. No reason exists for a debtor—who does not wish to lose the value of the Chapter 13 bargain—to continue to struggle under less advantageous loan terms, which, by implication, puts the future stream of payments to creditors under the Chapter 13 plan at risk.

Seventh, the court is unconvinced based on the facts of this case that a substantial, unanticipated change in circumstances has occurred that merits a plan modification under the rule announced by the Fourth Circuit in *Arnold,* 869 F.2d at 243. The Debtor's home has apparently appreciated in value from $73,000 in 2003 to $84,000 in 2006. No other evidence of the property's current market value was adduced. Given the information available to the court, the appreciation in value of the Debtor's principal residence by $11,000 over 2½ years is not necessarily a substantial change; especially considering the rising tide of real estate values in the Eastern Panhandle of West Virginia. Likewise, the court cannot say that the appreciation of pre-petition property in this case is unanticipated.[4] Moreover, unlike sale cases, the confirmed

---

4. The Trustee has cited cases from the First Circuit in support of her position that a refinancing is a plan modification. *See, e.g., In re Martin,* 232 B.R. 29 (Bankr.D.Mass.1999). In the case of *Barbosa v. Soloman,* 235 F.3d 31, 41–42 (1st Cir.2000), however, the First Circuit rejected the Fourth Circuit's holding that res judicata applies to orders confirming Chapter 13 plans. Therefore, any decision from the First Circuit dealing with the modification of confirmed plans is of limited utility.

plan in this case calls for the Debtor to retain his principal residence; by refinancing, the Debtor is not altering the confirmed plan's treatment of his principal residence—the Debtor is merely incurring a post-petition debt.

## III. CONCLUSION

For the above-stated reasons, the court does not find that the Debtor's proposed refinancing and early plan payout constitutes a modification of the Debtor's Chapter 13 plan; consequently, the court will approve the Debtor's motion to refinance his property. The court will enter a separate order pursuant to Fed. R. Bankr.P. 9021.