In re Stacy L. MILLER, Debtor.

Stacy L. Miller, Movant,

v.

Loan Star Mortgage, Inc., Option One Mortgage Corp. And Ronda J. Winnecour, Esq., Chapter 13 Trustee, Respondents.

No. 03–12301.

United States Bankruptcy Court, W.D. Pennsylvania.

May 16, 2005.

Gary V. Skiba, Esq., Erie, PA, for Debtor.

Joseph P. Schalk, Esq., Philadelphia, PA, for Wells Fargo Home Mortgage, Inc.

Ronda J. Winnecour, Esq., Pittsburgh, PA, Chapter 13 Trustee.

### OPINION

WARREN W. BENTZ, Bankruptcy Judge.

#### Introduction

Stacy L. Miller ("Debtor") filed a voluntary Petition under Chapter 13 of the Bankruptcy Code on September 22, 2003. Ronda J. Winnecour, Esq. ("Trustee") serves as Chapter 13 Trustee. Before the Court is DEBTOR'S MOTION FOR AUTHORIZATION FOR SECURED POST-

PETITION FINANCING ("Motion"). The Trustee objects to the Motion.

### Present Chapter 13 Plan

Debtor's Amended Chapter 13 Plan dated November 3, 2004 (the "Plan") was confirmed by Order dated December 13, 2004. The Plan is designed to cure arrears on a first mortgage held by Wells Fargo Home Mortgage, Inc. ("Wells Fargo"), payoff a modified principal balance on an automobile loan, and pay Debtor's attorneys' fees. The Plan contemplates no distribution to unsecured creditors.

### Positions of the Parties

Debtor proposes to obtain a new first mortgage on her residence in the amount of $80,000 and utilize the proceeds to payoff the balance owed to Wells Fargo and to tender to the Trustee an amount sufficient to pay the plan base which Debtor asserts will entitle her to a discharge.

The Trustee asserts that the proposed refinancing constitutes a plan modification and that the proposal fails to comply with the requirements of 11 USC § 1325(b)(1)(B)[1]. The Trustee further asserts that the best effort test under § 1325(b)(1)(B) mandates that the Debtor must either remain in Chapter 13 for no less than 36 months or must pay unsecured creditors 100% of their allowed claims.

### Plan Modification

The initial issue for resolution is whether Debtor's proposal to refinance her residence to achieve an early payoff of the Plan from the proceeds of the loan constitutes a plan modification under § 1329.

Section 1329 provides in relevant part:

---

[1] All references to Code sections are to Title of 11 of the United States Code unless other-

§ 1329 Modification of plan after confirmation

(a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to–

(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;

(2) extend or reduce the time for such payments; or

(3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan.

(b)(1) Sections 1322(a), 1322(b), and 1322(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section.

11 U.S.C. § 1329(a, b).

The issue of whether a debtor's motion for permission to refinance a property in order to pay off existing liens and to achieve an early payoff of a Chapter 13 plan filed eighteen months after the petition was filed and seventeen months into a thirty-six month plan constitutes a plan modification was addressed by the court in the case of *In re Murphy*, 2005 WL 327099 (Bankr.E.D.Va., Jan.12, 2005). The Court states:

> Clearly, early payoff of a plan will have the literal effect of reducing the period over which payments are made on "claims of a particular class" (which is what "such payments" grammatically refers to), such as unsecured claims. Ad-

wise indicated.

ditionally, the sale or refinance will itself result in a lump-sum payoff (usually at settlement) of any mortgage arrearage claim being paid through the plan. Yet, the fact remains that such early payoff of the plan has absolutely no prejudicial effect on any party, a point that the district court found persuasive in Evora. Although the court acknowledged that there appeared to be decisions on both sides of the question of whether an early payoff constituted a plan modification, it found that the conflict was more apparent than real, and it synthesized what it determined to be the correct rule:

When determining whether a motion is in fact a modification, courts examine the substance of the plan and the nature of the debtor's obligation to the debtor's creditors, not to the number of payments proposed. If a motion, whether or not styled as a motion to amend the plan, seeks to alter the substance of the plan, it is treated as a modification. [*Massachusetts Housing Finance Agency v.*] Evora, 255 B.R. [336] at 342 [(D.Mass.2000)]. The crucial inquiry, according to the court, was not whether the motion affects the "number of payments." but whether it affects "the amount to be paid to the unsecured creditors." *Id.*

In the present case, neither the motion to sell nor the motion to refinance seeks to reduce the amount to be paid the unsecured creditors. Indeed, because there is a time value to money, an early payoff actually increases the economic worth, or present value, of the distribution to the unsecured creditors. Even creditors being paid at a nominal 100 cents on the dollar do not in economic terms actually receive that amount when the claim is paid by deferred payments over an extended period of time. For example, using a discount rate of 6% per annum, the present value received by creditor whose $100 claim is paid in equal monthly installments over 36 months at $91.38. If the plan is paid off early at the 12th month, however, the present value increases to $95.14, which is obviously a benefit to the creditor. In such circumstances, to treat the debtor's voluntary early payoff of the plan as a "modification" would represent a triumph of formalism over substance and common sense. Accordingly, the court declines to treat a voluntary early payoff by the debtors of the confirmed plans in the present cases as a post-confirmation "modification" that triggers de novo review of previously resolved confirmation issues, such as the liquidation test.

*In re Murphy*, 2005 WL 327099 (Bankr. E.D.Va. Jan.12, 2005).

■ We agree with *Murphy* and decline to treat a voluntary early pay-off of confirmed plans as a modification where Debtor seeks no change in the payment amount and actually increases the economic worth by paying the contractual obligations due under a confirmed plan earlier than promised.

Courts have generally recognized the appropriateness of granting the request of a trustee or creditor to increase distribution under a confirmed plan when a change in the debtor's financial situation is substantial and the magnitude of the change could not have reasonably been anticipated at the time of confirmation by the party seeking modification. *Arnold v. Weast*, 869 F.2d 240, 243 (4th Cir.1989).

There is no suggestion that Debtor's financial fortunes have changed or improved. Debtor merely seeks to trade one obligation for another by refinancing her residence. The refinancing will enable the Debtor to pay off an existing mortgage and satisfy obligations due under the terms of the confirmed Plan. In exchange,

Debtor will be obligated to make payment on the new mortgage into the future. The Court finds that approval of the Debtor's Motion will not constitute a modification of Debtor's confirmed Plan.

### Best Efforts Test

■ The Trustee asserts that Debtor must meet the "best efforts test" found in § 1325(b)(1)(B). "According to § 1325(b)(1), as amended in 1984, a plan cannot be confirmed unless it pays objecting unsecured creditors in full; or in the alternative, unless the plan, as of the date of confirmation, 'provides that all of the debtor's *projected disposable income* to be received in the three-year period beginning on the date the first payment is due under the plan will be applied to make payments under the plan'." *In re Richardson*, 283 B.R. 783, 797–98 (Bankr. D.Kan.2002) *quoting* § 1325(b)(1)(B) (emphasis in original).

■ Confirmation of the Debtor's original Plan necessarily incorporates a finding that the proposed distributions include all of the debtor's projected disposable income and satisfies the best efforts requirement. *See In re Richardson* 283 B.R. at 799. "Confirmation of the plan is the Courts' approval of a new contract with the debtor's prepetition creditors limiting them to recovery of the ... debtor's projected disposal income designated by the plan for payment to prepetition creditors and any tangible property committed to the plan." *Id.* at 800. Absent a change in the debtor's financial fortunes, debtor's prepetition creditors are entitled only to those distributions provided under the confirmed plan.

> Confirmation is the court's approval of a contract, in effect, between the debtor and the creditors. The debtor pledges his or her projected disposable income and the Code gives that money to the creditors, even though that amount may not pay their claims in full. This is the statutory allowance that all the prepetition creditors are entitled to receive under the Code. The focus must be on this confirmed statutory contract. There is nothing in the code that says the debtor must suffer through three years of paying projected disposable income if good fortune would allow him or her to make an earlier payoff. The object of the Code provision is not to force the debtor to make payments over a period of time; the object is to give creditors some recovery on their claims, even tough it may not be full recovery. Allowing a payoff accomplishes this purpose.

*In re Richardson,* 283 B.R. at 801.

### Conclusion

We conclude that Debtor's Motion which will enable Debtor to satisfy her obligations under the confirmed Plan earlier than anticipated is a benefit to creditors. There are no material changes in the Debtor's financial circumstances to warrant plan modification.

An appropriate Order will be entered.

### ORDER

This 16th day of May, 2005, in accordance with the accompanying Opinion, it shall be and hereby is Ordered as follows:

1. Stacy L. Miller is authorized to borrow the sum of $80,000 from Option One Mortgage Corp. On a secured basis. The Debtor is authorized to sign a mortgage and any other documents necessary to place a first mortgage on her residence at 235 Milliken Ave., Sharpsville, Mercer County, Pennsylvania 16150. The Mortgage shall be payable over no more than thirty years, the interest rate shall not exceed 9% per annum, and the monthly payment shall not exceed $643.70.

544

2. Wells Fargo Home Mortgage, Inc. ("Wells Fargo") shall be paid in full at closing on the loan.

3. The entire net balance of the loan proceeds remaining of the after payment to Wells Fargo shall be transmitted to the Chapter 13 Trustee for distribution in accordance with the terms of the debtor's Chapter 13 plan dated November 3, 2004, and confirmed December 13, 2004.

4. Debtor shall promptly pay to the Chapter 13 Trustee any additional amount above the loan proceeds necessary to pay the plan base to complete the plan, after which the Trustee shall process the case for closing.