**In re James BROWN, Debtor.**

No. 03 B 23239.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

July 7, 2005.

R. Elliott Halsey, Robert J. Semrad and Associates, Chicago, IL, Attorney for the Debtor.

Jay W. Tribou, Office of the Chapter 13 Trustee, Marilyn O. Marshall, Chicago, IL, Attorney for the Trustee.

## MEMORANDUM OPINION

PAMELA S. HOLLIS, Bankruptcy Judge.

The Chapter 13 Trustee seeks modification of James Brown's confirmed plan to raise monthly plan payments, contending that his disposable income significantly increased following plan confirmation. The Trustee also asserts that additional funds are available to unsecured creditors through Brown's refinancing of his real property. The court grants the Trustee's motion to amend, but Brown is not required to turn over his refinancing proceeds as an additional lump sum payment to unsecured creditors.

## BACKGROUND

Brown filed a petition for relief under Chapter 13 on May 28, 2003. His proposed plan of reorganization was confirmed on August 11, 2003, and provided that Brown would pay $425 per month for 36 months, for total payments of $15,300. The Order Confirming Chapter 13 Plan specifically provided that "all property of the estate, as specified by 11 U.S.C. §§ 541 and 1306, shall continue to be property of the estate following confirmation."

When Brown filed his bankruptcy case in May 2003, he scheduled his monthly gross income at $3,400 per month. In October 2004, Brown sought and obtained court approval to refinance his real property at 11337 South Prairie, in Chicago. According to the application he submitted in support of the refinancing, Brown's gross income was $4,333.33 per month. The Trustee assumed that after taxes and other deductions, Brown's net income increased from $2,580 to $3,293.33, an increase of $713.33. Brown admitted that the Trustee's assumptions about his employment income were correct.

Additionally, Brown's income from his rental property is greater than originally scheduled. While the parties disagree over the amount of the gain, according to the refinancing application, the gross rental income is now $1,920.00 and the net rental income is $1,440.00. Brown originally scheduled his rental income as $1,125.00. Therefore, his rental income has increased by at least $315.00 per month.

The Trustee seeks to modify paragraph D1 of Brown's confirmed plan to increase the plan payment to $1,933.33 [1] per month for the remaining 19 months of the plan for a total pot of $43,958.27. The Trustee also seeks to apply the proceeds from Brown's refinancing as a lump sum payment in addition to Debtor's regular monthly payments.

## LEGAL DISCUSSION

*Modification of a Chapter 13 Plan After Confirmation*

According to 11 U.S.C. § 1329,

(a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—

 (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan; . . . .

(b) Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section.

■ As the plan proponent, the Trustee bears the burden to prove the conditions for confirmation of the modified plan over Brown's objection. *In re Than*, 215 B.R. 430, 434 (9th Cir. BAP 1997).

■ "It has been held that the Chapter 13 trustee has standing to seek postconfirmation modification to increase payments into the plan based on an increase in the debtor's disposable income, notwith-

---

1. This figure is calculated by adding the increase in income to the original plan payment of $425. The Trustee asserts a total income increase of $1508.33, while Brown argues that the total amount is not this high, since rental income did not increase by $795. No party requested a hearing on this dispute, so for purposes of modification, the court considers the rental income gain to be $315.00 per month. This reduces the Trustee's total income gain figure from $1508.33 to $1028.33. Debtor's reply opposing modification concedes a total income increase in the latter amount.

standing that the trustee did not raise a disposable income objection to confirmation of the original plan." Hon. Keith M. Lundin, 3 Chapter 13 Bankruptcy § 266.1 (3rd ed. 2000 & Supp.2004) (footnote omitted). While some courts require a showing of changed circumstances, binding precedent from the Seventh Circuit instructs us that "§ 1329 and the doctrine of res judicata do not require a minimal showing of a change in circumstances." *Matter of Witkowski,* 16 F.3d 739, 746 (7th Cir.1994). Instead, the "trustee has the absolute right to seek modification of a bankruptcy plan after its confirmation but before completion of the plan payments." *Id.* at 748. Brown does not argue he completed his plan payments, so the Trustee's motion to amend is timely.[2]

■■■ The court need not always grant a motion to modify, even when there are changed circumstances. As the Seventh Circuit noted in *Witkowski,* "all proposed modifications need not be approved.... Whether the modification will be granted is within the bankruptcy court's discretion." *Id.* at 746 and 748.

However, in this case, the debtor's circumstances have significantly changed. Brown substantially increased his disposable income because of gains in both his wage and rental income. The confirmed plan only provided for a 10% payout to unsecured creditors. The Trustee is entitled to move for modification of the Chapter 13 plan, and the motion may be granted if the requirements for modification—satisfaction of sections 1322(a), 1322(b),

1323(c) and 1325(a)—are met. Brown does not claim that these requirements for modification are not satisfied. Instead, he argues that the Code does not require that plans be modified if a debtor's disposable income increases.

■■■ The court agrees that there is no such requirement; in fact, the monitoring of all chapter 13 debtors' postpetition income would place an enormous burden on the system.[3] However, because of the papers that Brown filed in this case when he sought permission for his refinancing, the Chapter 13 Trustee discovered that Brown's income was much greater. The Code provides that the Trustee may move at any time for modification of the plan:

> [T]he statute allows the trustee to do exactly what the trustee seeks to do here, i.e., propose a modification of the debtor's plan to seek an increase in the dividend payable to unsecured creditors under the debtor's confirmed Chapter 13 plan. It is hard to imagine a clearer case for the application of Justice Scalia's constant admonition that when the plain language of the Code is clear, there is no need to look to the legislative history or other extraneous sources for guidance.

> *In re Powers,* 140 B.R. 476, 478–479 (Bankr.N.D.Ill.1992).

*Brown's Additional Income Warrants Plan Modification*

Section 1325(b) provides:

---

2. The parties agreed in court that the escrow or delivery of refinance proceeds to the Trustee would not prejudice their right to propose or oppose modification of the plan. Setting aside the refinancing proceeds pending the court's ruling on modification does not "complete plan payments" so as to render the Trustee's motion to amend untimely. *In re Nevins,* No. 02–37055DWS, 2005 WL 984182,

2005 Bankr.LEXIS 735 (Bankr.E.D.Pa. April 26, 2005).

3. According to the Annual Report for the U.S. Bankruptcy Court for the Northern District of Illinois, in 2000 there were 12,650 Chapter 13 cases filed in the Eastern Division. See http://www.ilnb.uscourts.gov/ general court information/annual report.

(b) (1) If the trustee or the holder of an allowed unsecured claim *objects* to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—

(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; *or*

*(B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.*

(Emphasis added).

■ Although the Trustee asserts she is not relying on this section's requirement that all disposable income be paid into the plan for three years as her sole justification for seeking an amendment, she maintains that this section should apply to all plan modifications. There is a split of authority on whether the disposable income test of § 1325(b)(1)(B) applies to plan modification, but the test is not germane here. Under the plain language of § 1325, subsection (b) is applicable only when an objection to confirmation is brought by the Trustee or the holder of an allowed unsecured claim. Here, the Trustee is the proponent of the plan modification and no such objection was asserted. Accordingly, the requirement of § 1325(b)(1)(B) that a plan cannot be approved unless it provides "that all of the debtor's projected disposable income ... will be applied to make payments under the plan," is not controlling here. *See Than,* 215 B.R. at 437 ("By its terms, § 1325(b) applies after an objection to plan confirmation."); *In re Forbes,* 215 B.R. 183, 191–192 (8th Cir. BAP 1997); *In re Golek,* 308 B.R. 332, 337 (Bankr. N.D.Ill.2004) ("When Congress wants to say something, it knows how to say it, and in this instance, Congress did not say it."). *But see Powers,* 140 B.R. at 480 n. 5 ("In effect, § 1325(b) comes in through the back door rather than the front," because § 1325(a)(1) requires a modified plan to comply with the provisions of Chapter 13.).[4] Since no objection was filed[5] to the Trustee's proposed amendments, the court need not decide whether the disposable income or "best efforts" test applies.

■ However, § 1325(a) *is* applicable at modification, and subsection (a)(3) includes a requirement that "the plan has been proposed in good faith...." Confirming a modified plan that reflects a significant increase in available income and a commensurately increased payout to unsecured creditors comports with that good faith requirement. *See In re Arnold,* 869

---

4. *Powers* applied the disposable income test where the trustee contended that an order approving the sale of debtor's real property was a disguised motion to amend. The court specifically noted that the test applied because the trustee objected:

> Section 1325(b) requires the debtor's plan to either apply all of the debtor's disposable income for at least 3 years to the plan, or, to pay 100% of the claims filed within 3 years of confirmation in the face of an unsecured creditor or Chapter 13 trustee objection to the plan. Since the unsecured creditors here will not receive 100% of their claims, the trustee certainly may object to

confirmation of a plan providing for less than full repayment while making the debtor's disposable income available to her unsecured creditors for only 15 months. Because the trustee has objected to a 15—month plan paying unsecured creditors 54% of their claims, the plan cannot be so modified, and the order of January 15, 1992 approving the debtor's amended plan must be vacated.

5. The court recognizes that the Debtor objects to the proposed modification, but § 1325(b) is invoked only upon objection by the trustee or an unsecured creditor with an allowed claim.

F.2d 240, 242 (4th Cir.1989) ("Congress ... intended that the debtor repay his creditors to the extent of his capability during the Chapter 13 period. Certainly, Congress did not intend for debtors who experience substantially improved financial conditions after confirmation to avoid paying more to their creditors."); *In re Sounakhene*, 249 B.R. 801, 805 (Bankr.S.D.Cal. 2000) (The plain language of § 1329(a) does not include the disposable income requirement, so "the better approach is to utilize the analysis underlying the disposable income test in exercising the court's judgment and discretion.").

■■■■ Even though the disposable income or "best efforts" test may not be mandatory at the time of modification, the court finds that the good faith test requires consideration of whether there is excess income above the current plan payments that is available for the debtor to pay into the plan. Consequently, the court will grant the motion to modify the plan to increase plan payments. Because the parties dispute the amount of increased income (see footnote 1), the court is not in a position to approve the higher amount advocated by the Trustee in her motion to amend. Instead, the court will grant the Trustee's motion to increase the plan payment for the remaining 19 months to $1,425.00, which is based on the original plan payment of $425 and a post-confirmation increase in income of at least $1000 per month.

The record is not clear as to whether this $1000 a month increase in payment (totaling $19,000 for the remaining term of the plan) moots the Trustee's final argument that section D2(b) of the original plan prohibits Brown from paying off his plan in less than 36 months if all allowed claims are not paid in full. Subsection 1 of section D of the Plan required Brown to pay $425 for 36 months for total payments of $15,300. Subsection 2(b) of section D provides: "The Plan will conclude, prior to the end of the initial term, at such time as all allowed claims are paid in full, with any interest required by the Plan." Essentially the Trustee is trying to impose one part of section D (part 2) on the debtor, while seeking to change the other part (D1) by increasing the monthly payments. The court will not order an increase in payments in excess of the $1000 by enforcing one part of the original plan that the Trustee seeks to amend. The original provisions of paragraph D appear dependent on one another. If Brown substantially increases the monthly payment required under the original plan's D1 section, this court may very well permit the new obligation to be paid off earlier than the original three year term. The Trustee no longer wants the original plan to control, so he can not rely on enforcing provisions of the original plan to justify changing it.

*Debtor Will Not be Ordered to Pay Proceeds from the Refinancing In Addition to the Amended Monthly Payments*

The second question is whether the plan should also be modified to include an additional lump sum payment of the proceeds from Brown's refinancing of his real property. That real property became property of the estate when Brown filed for relief under Chapter 13. *See* § 541(a). The Order Confirming Chapter 13 Plan in this case specifically states that "all property of the estate, as specified by 11 U.S.C. §§ 541 and 1306, shall continue to be property of the estate following confirmation."

■■■ As property of the estate, refinance proceeds should be considered when applying the "best interests of creditors" test found in § 1325(a)(4):

(a) [T]he court shall confirm a plan if—

 (4) the value, as of the effective date of the plan, of property to be dis-

tributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date.

■ The "property to be distributed under the plan" must be valued as of the "effective date of the plan." Consequently, the question arises as to whether that analysis is conducted as of the effective date of the modified plan or the effective date of the original plan. Having reviewed applicable precedent and commentary, the court concludes that the "best interests" or liquidation test is applied on the effective date of the modification. *See In re Morgan*, 299 B.R. 118, 124–125 (Bankr.D.Md. 2003); *In re Jefferson*, 299 B.R. 468, 471 (Bankr.D.Ohio 2003); *In re Nott*, 269 B.R. 250, 255 (Bankr.M.D.Fla.2000); *In re Martin*, 232 B.R. 29, 38 (Bankr.D.Mass.1999); *In re Stinson*, 302 B.R. 828, 829 (Bankr. Md.2003), citing legislative history stating that the liquidation test must be re-determined at the time of confirmation of the modified plan, H.R.Rep. No. 595, 95th Cong., 1st Sess. 431 (1977), U.S.Code Cong. & Admin. News pp. 5787, 6386, 6387. *See* also Lundin, 3 Chapter 13 Bankruptcy § 254.1 (3rd ed. 2000 & Supp.2004) ("[A] majority of reported decisions fix the effective date for best-interests-of-creditors-test purposes at modification as the effective date of the plan as modified."). Since the "best interests" test is applied as of the date of modification, the refinance proceeds must be considered assets in the liquidation analysis under § 1325(a)(4).

■ The Trustee appears to assume that in every instance where the debtor receives proceeds of a refinance, the debtor's financial situation has improved. However, the refinance proceeds are accompanied by a new loan to the debtor, which significantly offsets the apparent increase to the debtor's balance sheet. This court agrees with the analysis in *In re Murphy*, 327 B.R. 760 (Bankr.E.D.2005):

> But even if the appreciation could be fairly characterized as both substantial and unanticipated, the court cannot find that the refinance effected an improvement in the debtors' *financial condition* sufficient to support involuntary modification of their plan. The refinance simply exchanged the increase in the value of the house for a corresponding amount of debt. While it is true that the debtors, by refinancing, have in a colloquial sense "tapped" the equity that has accrued since confirmation, the cash they have received is by no means found money. What the debtors have received, very simply, is a loan. A loan does not represent income, nor does it improve a debtor's financial condition. Rather, the cash received from a loan is balanced by a corresponding debt, with the result that the debtors' net worth remains unaltered. The trustee does not suggest that the debtors could have been compelled, 18 months into a five-year plan, to incur indebtedness and borrow against the equity in their residence so as to increase the dividend on unsecured claims regardless of how much the property might have appreciated during the plan term. The fact that the debtors (whether wisely or otherwise) voluntarily decided to borrow against the equity should not result in a different outcome.

327 B.R. at 774.

*See* also, *In re Miller*, 325 B.R. 539 (Bankr.W.D.Pa.2005), adopting *Murphy*:

> We agree with Murphy and decline to treat a voluntary early pay-off of confirmed plans as a modification where Debtor seeks no change in the payment

amount and actually increases the economic worth by paying the contractual obligations due under a confirmed plan earlier than promised.

Courts have generally recognized the appropriateness of granting the request of a trustee or creditor to increase distribution under a confirmed plan when a change in the debtor's financial situation is substantial and the magnitude of the change could not have reasonably been anticipated at the time of confirmation by the party seeking modification. *In re Arnold,* 869 F.2d 240, 243 (4th Cir.1989).

There is no suggestion that Debtor's financial fortunes have changed or improved. Debtor merely seeks to trade one obligation for another by refinancing her residence. The refinancing will enable the Debtor to pay off an existing mortgage and satisfy obligations due under the terms of the confirmed Plan. In exchange, Debtor will be obligated to make payment on the new mortgage into the future. The Court finds that approval of the Debtor's Motion will not constitute a modification of Debtor's confirmed Plan.

325 B.R. at 542.

Similarly, the record in this case does not demonstrate that the refinancing of Brown's residence increased his net worth for purposes of the liquidation test. Brown received funds from the refinancing, but his mortgage obligation increased to cover those funds and closing costs. Although it is difficult to read the faxed application attached to Brown's motion to refinance, it appears that his mortgage increased from $155,000.00 to $168,000.00 and the net refinance proceeds were less than this mortgage debt increase.

 If the new loan transaction reduces the debtor's monthly mortgage obligation, the trustee could seek modification of the plan on the basis of an increase in disposable income. However, the court cannot conclude from the record in this case that the refinancing improved Brown's financial condition sufficient to compel turnover of the refinance proceeds to the trustee. The mere receipt of refinance proceeds, alone, does not justify a plan modification requiring all those proceeds to be paid into the plan in addition to the original monthly plan payments. Although Brown will not be compelled to turn over the refinance proceeds to the Trustee as an additional lump sum payment, he may use the proceeds to complete an early pay off of the remaining 19 months of plan payments in the amount increased herein pursuant to the Trustee's motion to modify. *See Murphy* and *Miller* above, permitting early payments as long as the amounts promised to creditors are not reduced, since a non-discounted earlier payment is worth more to creditors than the same amount spread over time.

It is worth noting that if this case involved the sale of Brown's real estate, as opposed to a refinance, the result could change. There is no certain, corresponding liability or new loan associated with the sale of real estate in contrast to a refinance. Without an offsetting new loan or liability, the debtor's balance sheet improves under the liquidation test, setting the stage for a modified plan increasing payments. *See, Murphy* where the court ordered modification of a plan to include sales proceeds, but in the same opinion, denied modification where the proceeds were generated by the refinancing of real estate.

**CONCLUSION**

For the reasons stated above, the Trustee's motion to modify is granted in part. Trustee and Debtor's counsel are to confer and submit a draft order modifying the

plan consistent with the ruling herein, within 21 days from the date of this order.