In re Thelma Fay KURTZAHN, Debtor.

Thelma Kurtzahn, Plaintiff,

v.

The Sheriff of Benton County, Minnesota, not Individually but in His Official Capacity, Anderson Homes, Inc., and Security State Bank of Sebeka, Defendants.

Bankruptcy No. 05–90815.
Adversary No. 06–3316.

United States Bankruptcy Court,
D. Minnesota.

June 1, 2006.

Sam Calvert, St. Cloud, MN, for Debtor.

## ORDER DENYING DEBTOR'S MOTION FOR PRELIMINARY INJUNCTION, AND DISMISSING ADVERSARY PROCEEDING

GREGORY F. KISHEL, Chief Judge.

This adversary proceeding is governed by the terms of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. No. 109–8 ("the Act"), because its underlying Chapter 13 case was commenced after the October 17, 2005 effective date of the Act. It came on before the Court on May 23, 2006, for hearing on the Plaintiff's motion for interim equitable relief.[1] The Plaintiff (hereafter "the Debtor") appeared by her attorney, Sam V. Calvert. Defendant Anderson Hornes, Inc. appeared by its attorney, Erik F. Hansen. Upon the record made for the hearing—consisting of the moving and responsive documents, their supporting affidavits, and the arguments of counsel—the following memorandum of decision is made.

This adversary proceeding was commenced in the wake of a decision rendered in the underlying Chapter 13 case, BKY 05–90815, now reported as *In re Kurtzahn*, 337 B.R. 356 (Bankr.D.Minn.2006). In that case, the Debtor had made a motion under 11 U.S.C. § 362(c)(3)(B), requesting an extension of the stay against creditors' enforcement of their rights against her and her property. Anderson Homes, which holds a lien against the mobile home that the Debtor and her husband occupy as a residence, had opposed the motion.[2] The Court denied the motion, which meant that the stay had terminated 30 days after the commencement of BKY 05–90815.[3] The Debtor did not appeal from the order.

The order under § 362(c)(3)(B) was entered on January 31, 2006. In the meantime, however, proceedings on confirmation of the Debtor's plan had gone forward apace. Neither the Standing Trustee nor any creditor had objected to confirmation; thus, attendance at a formal confirmation hearing was excused pursuant to the standard local procedure for administering Chapter 13 cases. An order confirming the Debtor's plan was entered "by default" on January 26, 2006—five days before the entry of the order under § 362(c)(3)(b).

The Debtor's plan provides for a treatment of the claim that arose from the Debtor's financing for the mobile home, for which Anderson Homes is the real party in interest as creditor. The claim is to be treated as partially secured, with the designated value of the secured claim, $16,860.58, to be paid in full in monthly installments of $346.59 over 59 months. The balance of the lienor's claim would receive distribution under an unsecured classification, ultimately garnering a pro rata share of a very small residuum at the

---

1. The Plaintiff's counsel titled the motion as one "for Restraining Order." At the hearing, counsel agreed that the motion could be treated as one for a preliminary injunction under Fed.R.Civ.P. 65(a), *as incorporated by* Fed. R. Bankr.P. 7065.

2. In the response to the motion at bar, Defendant Security State Bank of Sebeka is now identified as "merely the payment agent for Anderson Homes, Inc., who [sic] is, in fact, the secured party ..." This does not entirely jibe with recitations in the original Retail Installment Contract for the sale of the mobile home, *see* 337 B.R. at 359 n. 4. However, that is of no moment at this time.

3. The limitation of the automatic stay in bankruptcy had been imposed by operation of law, 11 U.S.C. § 362(c)(3), because the Debtor had had a prior Chapter 13 case pending within the year preceding the filing that commenced BKY 05–90815, and that earlier case had been dismissed. For more detail, *see* 337 B.R. at 358 and 363.

very end of the plan's duration.[4]

So, a legal procedure that the Debtor had initiated—confirmation of a plan under Chapter 13—went ahead to its conclusion without participation by Anderson Homes.

In close proximity in time, a different legal process initiated by Anderson Homes proceeded to fruition as well, without participation by the Debtor. Relying on the lapse of the automatic stay in BKY 05–90815, Anderson Homes went back to the Wadena County, Minnesota District Court to finalize the claim and delivery (replevin) action it had commenced there in 2003, to enforce its rights as lienor. On February 27, 2006, that court (Sally Ireland Robertson, J.) entered an order for judgment. In supporting findings, Judge Robertson noted that she had previously adjudicated a default by the Debtor and her husband under the Retail Installment Contract for the mobile home.[5] She went on to recite that Anderson Homes had brought a motion for recovery of possession of the mobile home,[6] had set a hearing on it for November 10, 2005, and had had that hearing continued to November 23, 2005 at the Debtor's request; that the Debtor had failed to appear on November 23, 2005; and that the Debtor had filed the petition to commence BKY 05–90815 on the same date. She expressly noted that the Debtor's motion under § 362(c)(3) had been denied by this Court, and that the replevin proceeding before her was no longer stayed. She also recited facts going to the prerequisites for replevin under the Minnesota Manufactured Home Reposses-

sion Security Act, Minn.Stat. § 327.61, *et seq.* On all of those findings, and given the failure of the Debtor and her husband to cure their default or to produce evidence to justify their continued retention of the mobile home, Judge Robertson ruled that Anderson Homes was entitled to immediate possession. Accordingly, she directed "the Sheriff of Wadena County or any other county" to assist Anderson Homes in the recovery of the mobile home in a peaceful manner.[7] The court administrator of the Wadena County District Court entered judgment on Judge Robertson's order on February 28, 2006. The Debtor did not appeal from this judgment.

Things apparently started to get hot after that, with Anderson Homes "threaten[ing] to repossess the [mobile] home under color of" the state court's judgment of claim and delivery. On April 28, 2006, the Debtor filed a complaint to commence this adversary proceeding. In it, she seeks a permanent injunction against the Defendants "seizing the manufactured home in question ..."[8] Via the motion at bar, she seeks a preliminary injunction against the Defendants' enforcement of the claim and delivery judgment, "so long as [the Debtor] is not in default under her confirmed chapter 13 plan."

In oral argument, counsel posed the issue as involving two court orders, with the question being which one trumped the other.

The Debtor's counsel maintains that the confirmation order protects his client, by supplanting her original payment obli-

---

4. These terms are summarized in a bit more detail at 337 B.R. at 362 n. 17.

5. This had been done under an order entered on February 14, 2005.

6. Anderson Homes apparently had proceeded under authority of Minn.Stat. § 565.23.

7. Hence, the apparent reason for including the Sheriff of Benton County, Minnesota as a

named defendant to this adversary proceeding—the Debtor and her husband having located the mobile home in Rice, Minnesota, which lies in Benton County.

8. She also seeks an award of costs and disbursements against Anderson Homes and the Bank "if they defend this action."

gations to Anderson Homes with those under the plan's treatment of its claim. As the Debtor would have it, as long as she is not in default under the plan's terms, the contractual and statutory right of Anderson Homes to repossess its collateral does not ripen to enforceability.

Counsel for Anderson Homes relies on the finding in the § 362(c)(3) order that the Debtor could not meet the feasibility requirement of § 1325(a)(6), 337 B.R. at 366–367, and that, "[as] such, ... the confirmation of the plan in this case should not be deemed to have bound Anderson [Homes] as the confirmation occurred before the automatic stay was terminated." (Emphasis in original.) Apart from the inaccurate legal characterization in this statement,[9] the link in logic between the early, specific finding on feasibility and the effect of an entered confirmation order does not spring clearly or readily to mind. However, the real point of the creditor's argument lies next in counsel's brief: "Rather, the termination of the automatic stay returns the parties to the terms of the contract in state law," under which the Debtor's persisting delinquency under the terms of the Retail Installment Contract would trigger a right in Anderson Homes to realize on its collateral now.

Neither of these arguments is much good—because both have it only about half right, and both ignore that third order in the sequence just described. It is worth discussing the reasons at length, if only because this confounding situation would not have arisen before the scattershot tinkering with the Bankruptcy Code that was wrought by the Act.

 The Debtor's argument is correct, but only within limits and only to a partic-ular point in time. It is still very much the case that

> [t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

11 U.S.C. § 1327(a). This meant that the Debtor's obligations of payment under her treatment of Anderson Homes's claim did legally supplant the like obligations under the pre-petition Retail Installment Contract. The plan also implicitly "provide[d] for the ... waiving of any [existing pre-petition] default" under the terms of the Retail Installment Contract, 11 U.S.C. § 1322(b)(3); and as such it assured the Debtor of a continuing right to possession as long as she remained current and in compliance with the terms of the plan. The binding effect of confirmation is not affected by her earlier failure to prove up the feasibility requirement in the context of her motion under § 362(c)(3), 337 B.R. at 365–366; she got her order of confirmation later, and § 1327(a) compels substantive consequences from its entry. Though Anderson Homes could well have asserted issue preclusion in objecting to confirmation under § 1325(a)(6), it did not.

Confirmation thus bound Anderson Homes to its due under the plan's terms, and not according to its pre-petition contractual expectancies—and any previously-effective termination of the stay as it had applied to Anderson Homes did not affect that. *In re Garrett,* 185 B.R. 620, 623–624 (Bankr.N.D.Ala.1995). *See also In re Miller,* 325 B.R. 539, 543 (Bankr.W.D.Pa. 2005); *In re Richardson,* 283 B.R. 783, 800

---

**9.** In actuality, the *"automatic"* stay had lapsed by operation of law on December 23, 2005, "the 30th day after the filing of the later case." 11 U.S.C. § 362(c)(3)(A). In denying the Debtor's motion on January 31, 2006, the Court only declined to extend the stay beyond the stopgap stretch that had been ordered to preserve the status quo while the motion was under advisement.

(Bankr.D.Kan.2002); *In re Thompson,* 224 B.R. 360, 366 (Bankr.N.D.Tex.1998); *In re Fewell,* 164 B.R. 153, 155 (Bankr.D.Colo. 1993) (all holding that confirmation of Chapter 13 plan binds creditors to structure of payments under plan's treatment of their claims). On the state of things immediately after confirmation, and under the development of proceedings up to that point, this *would* have meant that Anderson Homes did not have a right to take its remedies on default in a non-bankruptcy forum, as long as the Debtor performed under her plan.

■ The kicker, however, arose out of Anderson Homes's resumption of its long-deferred effort to repossess, once it had determined that bankruptcy law no longer prohibited it from doing so. For whatever reason, the Debtor did not interject herself back into that; she did not try to derail the process by defending on the ground that confirmation effectively deaccelerated her adjudicated default and deprived Anderson Homes of recourse against its collateral security at that time. The thing was, however, that the state-court process was going to go ahead to a decision whether the Debtor appeared or not—and that, in and of itself, did not violate post-BAPC-PA bankruptcy law.

Without input from the Debtor, Judge Robertson granted relief on the record before her. There was utterly no impediment, legal or procedural, to her doing so. She called it on the record before her, as she had to. The judgment entered on her order is now final. As such, it is entitled to receive full faith and credit from the federal courts, under 28 U.S.C. § 1738.[10] This leaves the parties—and this Court—bound by the final determination of a coordinate forum, that Anderson Homes has the right to immediate possession of the mobile home.

■ The Debtor's claim for equitable relief is premised entirely on her assertion of a right to retain possession; but the preclusive effect of the Wadena County District Court's judgment bars her from that argument. This means that the Debtor simply does not have a probability of success on the merits of her broader claims against Anderson Homes, as is required in this circuit for the issuance of a preliminary injunction. *See Dataphase Sys., Inc. v. C L Sys., Inc.,* 640 F.2d 109, 113–114 (8th Cir.1981). The Debtor's motion, therefore, must be denied. And, because there is really no means through which she could argue her way back to success on the merits, this adversary proceeding will be dismissed.[11]

IT IS HEREBY ORDERED:

1. The Plaintiff's motion for interim equitable relief, construed as one for a pre-

---

**10.** The Full Faith and Credit Act provides, in pertinent part, that state judicial proceedings "shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken." 28 U.S.C. § 1738. Under the Act, "a federal court must give the same preclusive effect to a state-court judgment as another court of that State would give." *Parsons Steel, Inc. v. First Alabama Bank,* 474 U.S. 518, 523, 106 S.Ct. 768, 88 L.Ed.2d 877 (1986). Additionally, "a state court's final judgment determining *its own* jurisdiction ordinarily qualifies for full faith and credit, so long as the jurisdictional issue was fully and fairly litigated in the court that rendered the judgment." *Marshall v. Marshall,* — U.S. —, 126 S.Ct. 1735, 1750, 164 L.Ed.2d 480 (2006). By way of a corollary to that last holding, Judge Robertson determined that she was fully empowered to reach the issue of right to possession, the bankruptcy stay no longer restraining Anderson Homes from pressing that issue. As a result, her conclusion to that effect, as well as her substantive ruling, are entitled to deference here, whether she considered the effect of plan confirmation or not.

**11.** In the way it lurched forward, this dispute presents two different cautionary tales, for debtor and creditor alike. A secured creditor

liminary injunction under Fed.R.Civ.P. 65(a), is denied.

2. This adversary proceeding is dismissed.

that gets entangled in a successor bankruptcy case under Chapter 13, that is subject to § 362(c)(3), and that wishes to realize on security held by a repeatedly-defaulting debtor, is best-put to oppose the debtor both on the motion for extension of the stay and in the confirmation proceedings. A victory under § 362(c)(3)(B) only enables the secured party to commence non-bankruptcy remedies, once the temporary stay of § 362(c)(3)(A) is over. Unless those remedies are very quickly obtained and the collateral almost immediately liquidated, the binding effect of confirmation can nullify any first victory under § 362(c)(3)(B). On the other hand, where the stay of § 362(c)(3)(A) has vanished unextended, the debtor dare not ignore the ongoing procedures that a creditor may initiate or resume in a non-bankruptcy forum after the lapse of the stay. Bankruptcy law now expressly contemplates that forum reaching the issues raised in such procedures, and ruling on them. If confirmation of a plan reconfigures a creditor's rights in the meantime, supporting an argument against the creditor's asserted right to repossess, that argument *is to be made to the state court.* Debtors' counsel now will have to assert the primacy of bankruptcy law, in the binding effect of confirmation, in a forum that otherwise is entirely free to do what it will under its own rules of decision. Otherwise, the state court will do what comes naturally, taking input from a creditor that will most likely structure its presentation under state law and terms of contract. Though a ruling in favor of the creditor on the issue of possession may be technically wrong for a failure to take cognizance of an override by bankruptcy law, it nonetheless will be fully enforceable once it is final. One suspects that those who urged the enactment of § 362(c)(3) would not have wished the multi-layering of procedures and the delay and persisting uncertainty that were occasioned in this Debtor's case. Yet, that is what Congress saddled everyone with, under the verbiage it chose to write into law via the Act.